SHIELDS, Respondent, vs. HANSEN, Appellant.

*March 5—April 1, 1930.*

C. O. *Bergener* of Racine, for the appellant.

For the respondent there was a brief by *Charles E. Wilson* and *William A. Sheldon,* both of Elkhorn, and oral argument by *Mr. Wilson.*

CROWNHART, J.   The issue litigated between the parties was whether or not the building and equipment for an oil station were trade fixtures, which the appellant had a right to remove from the premises upon the surrender of the premises under lease.

The appellant contended that it was agreed by and between himself and the respondent, when he leased the premises, that the appellant was to be permitted to remove the building and equipment at the termination of the lease.   The respondent denied this contention on the part of the appellant. The court found:

"That at the time said defendant placed upon said premises said drives, building, tanks, concrete foundations, plumbing fixtures, and the pipes connecting said tanks to said pumps, said defendant did not intend to remove the same."

It appears from the testimony that the parties entered into an oral agreement in March, 1922, whereby appellant was to occupy the premises in question for an oil station, and was to place thereon the necessary building and equipment and

to pay as rental for the premises $25 a month. The appellant contends that it was agreed that he was to prepare a written lease covering the agreement, which was to be executed by the parties. He testified that he did this and presented the written document to the respondent for signature; that after some time he saw the respondent about executing the lease, and the respondent informed him that he would not sign the lease for the reason that it contained a clause providing for a five-year renewal of the lease at its expiration; that the respondent made no other objection to the lease, and the appellant then said he would prepare a new lease leaving out the objectionable clause, but the respondent said it was not necessary—that his word was as good as his bond,—and nothing further was done in the way of executing a written lease. Appellant occupied and continued in possession of the premises until 1926, at which time respondent demanded a higher rental, and negotiations were entered into between the parties for a renewal of the lease, and a written lease was executed for a three-year term at a rental of $50 per month.

The first lease which was presented to the respondent for execution contained a clause providing that the appellant might remove the building and equipment to be placed upon the premises under the lease, at the termination thereof. According to the appellant's testimony, such clause was in accordance with the oral agreement, and respondent took no exception to the lease on that account. The second lease, and the one which was executed in 1926, made no reference to the removal of the building and equipment.

The building cost about $1,500 exclusive of the equipment. It is a small building, eight feet by twenty feet by eight feet high, lightly constructed and placed on top of a slab of cement and bolted thereto by about twenty bolts. The testimony shows without dispute that the building could be readily removed by jacking it up and putting skids under it. The oil tanks were merely laid in a pit in the ground and not

otherwise fastened to the soil. The property, when first leased, was entirely vacant, and it can be restored to its original condition by the removal of the tanks, building, and the concrete slab, and refilling the excavations made when the improvements were put on the premises, so that the premises will be in the identical condition that they were when leased.

It is the conclusion of this court from the evidence that the appellant's version of the oral lease is correct. It is highly improbable that the appellant, a business man of considerable experience, would enter upon the premises of the respondent and place a valuable building and equipment thereon without a definite understanding as to the length of time that he could occupy the place, and that he might remove his equipment at the termination of the lease. The land was not a valuable leasehold at the time.

The respondent did not pay any taxes on the improvements, and he made no claim to them until the appellant proposed to remove them. Respondent makes no claim that there was any agreement or understanding that the fixtures were to become a part of the realty and remain thereon at the termination of the lease. His claim is that because there was no express agreement that the fixtures were to be removed, they became a part of the realty as a matter of law.

The common law with reference to trade fixtures has been much modified in this country, so that the question of attachment to the soil or its adaptation for the purposes is not considered of so much importance as the intention of the parties at the time of the attachment of the fixtures to the premises. *Brobst v. Marty,* 162 Wis. 296, 156 N. W. 195; *Hanson v. Ryan,* 185 Wis. 566, 201 N. W. 749; *Zimmerman v. Treleven,* 192 Wis. 214, 216, 212 N. W. 266; 11 Ruling Case Law, p. 1069. Accession to the realty must affirmatively appear, and the tenant needs no express stipulation in the lease to give him the right to remove the fixtures. *Dougan v. H. J. Grell Co.* 174 Wis. 17, 24, 182 N. W. 350;

*State ex rel. Hansen S. Co. v. Bodden,* 166 Wis. 219, 221, 164 N. W. 1009.

It is urged that the acceptance of the written lease in 1926, with the trade fixtures on the premises, and without reservation of the right to remove them, is equivalent to abandonment of any right to remove them, if any be had. But that question seems to have been settled by this court to the contrary in *Second Nat. Bank v. O. E. Merrill Co.* 69 Wis. 501, at 514–515, 34 N. W. 514.

We conclude that the trial court was in error in granting the injunction.

*By the Court.*—The judgment of the county court is reversed, with directions to enter judgment in accordance with this opinion.