STANDARD OIL COMPANY, Respondent, vs. LA CROSSE SUPER AUTO SERVICE, INC., and another, Appellants.

*January 8—February 5, 1935.*

238

For the appellants there were briefs by *Higbee & Higbee* of La Crosse, and oral argument by *Jesse E. Higbee*.

For the respondent there were briefs by *Hale & Burke* of La Crosse, and oral argument by *Quincy H. Hale*.

NELSON, J. On October 29, 1929, one Farris was the owner of certain vacant premises located at the corner of Fourth and Cass streets in the city of La Crosse, upon which he proposed to construct a super auto service station. On

that day he applied to the defendant Woolley for a loan to be used in constructing the proposed station, and at that time exhibited to him certain plans and specifications, which did not include gasoline pumps or underground tanks, but did show where they were to be located. On that day Woolley loaned to Farris the sum of $20,000, which loan was secured by a mortgage on the premises mentioned. After executing the mortgage, Farris organized the defendant, La Crosse Super Auto Service, Inc., and thereafter conveyed the premises to it, subject to the mortgage which it assumed. On March 4, 1930, the defendant La Crosse Super Auto Service, Inc., leased to the plaintiff a part of the premises, which included the approach to the station, the rest-room and toilets situated in the building. The plaintiff thereafter installed three underground tanks beneath the concrete approach to the station and four gasoline pumps upon a concrete base, constructed for that purpose. One of the pumps was later removed and is not involved in this action. The lease, among other things, provided that the plaintiff should pay all taxes levied or assessed upon the property belonging to it upon said premises and that it should have the right at any time within thirty days after the termination of the lease to remove any equipment at any time placed thereon by it. The term of the lease was one year with the privilege of a four-year extension. The lease also provided that it might be terminated by giving ten days' written notice. Some time before the commencement of this action, both Farris and La Crosse Super Auto Service, Inc., defaulted as to certain principal and interest payments. Woolley thereupon demanded possession of the station, and La Crosse Super Auto Service, Inc., surrendered it to him. The plaintiff thereafter gave written notice of its option to terminate the lease, and demanded the right to remove the tanks and pumps, which demand was refused. Woolley did not know of the provisions

of the lease which permitted the plaintiff to remove the equipment installed by it upon the premises upon termination of the lease. Action was thereupon commenced to obtain possession of the property described. The defendant Woolley answered and alleged in substance that the gasoline tanks and pumps were fixtures and were subject to the lien of his mortgage, having become incorporated into the real estate. La Crosse Super Auto Service, Inc., similarly answered and also counter-claimed for $400 rent and $55 commissions asserted to be due it. The plaintiff served a reply in which it denied that there was due to the La Crosse Super Auto Service, Inc., more than $28 rent, and in which it admitted that it owed said defendant $55.52 as commissions. The plaintiff alleged by way of counter-claim that the defendant La Crosse Super Auto Service, Inc., was indebted to it in the sum of $102.89, after duly crediting what it owed the said defendant for rent and commissions.

The court found the facts substantially as stated, and also that the plaintiff was the owner of the equipment and entitled to its immediate possession; that none of the equipment was placed in or upon the premises as a permanent improvement; that at the time the plaintiff placed the equipment upon the premises it did not intend that said equipment should remain permanently; and that the equipment mentioned could be removed from the premises without material injury thereto. The court concluded that the plaintiff was entitled to a return of the equipment, or judgment for its fair value, and that the plaintiff was entitled to a separate judgment against the defendant, La Crosse Super Auto Service, Inc., for the sum of $61.86.

The defendants first contend that the court erred in finding and concluding, under all of the circumstances, that the gasoline pumps and tanks were not fixtures and were not subject to the lien of the Woolley mortgage. Whether articles of personal property are fixtures, i. e., real estate, is determined in this state, if not generally, by the following rules or tests:

(1) Actual physical annexation to the real estate; (2) application or adaptation to the use or purpose to which the realty is devoted; and (3) an intention on the part of the person making the annexation to make a permanent accession to the freehold. *Taylor v. Collins,* 51 Wis. 123, 8 N. W. 22; *Walker v. Grand Rapids F. M. Co.* 70 Wis. 92, 35 N. W. 332; *Homestead Land Co. v. Becker,* 96 Wis. 206, 71 N. W. 117; *Thomsen v. Cullen,* 196 Wis. 581, 219 N. W. 439.

It has often been said by this court that the matter of physical annexation of the article to the freehold is relatively unimportant:

"This matter of intention is coming to be the main test in such cases, and the matter of physical annexation of comparatively little importance." *Taylor v. Collins, supra.*

"The matter of the intention of the parties is held to be the principal consideration." *Homestead Land Co. v. Becker, supra.*

When the article "is attached for a mere temporary use, with the present intention of removal, it continues to be personal property." *Gunderson v. Swarthout,* 104 Wis. 186, 191, 80 N. W. 465.

This is especially true with respect to trade fixtures. *Shields v. Hansen,* 201 Wis. 349, 230 N. W. 51; *Zimmerman v. Treleven,* 192 Wis. 214, 212 N. W. 266; *Hanson v. Ryan,* 185 Wis. 566, 201 N. W. 749; *Brobst v. Marty,* 162 Wis. 296, 156 N. W. 195.

The plaintiff concedes that if the gasoline pumps and tanks when installed were common-law fixtures, then they were subject to the lien of the Woolley mortgage, and could not be removed without the consent of Woolley. *Fuller-Warren Co. v. Harter,* 110 Wis. 80, 85 N. W. 698. The plaintiff, however, maintains, and the trial court found, that the pumps and tanks under the undisputed facts never became common-law fixtures.

There is no doubt as to what the intention of the plaintiff and the defendant La Crosse Super Auto Service, Inc., was at the time the tanks and pumps were installed and at all

times thereafter during the term of the lease. The facts clearly show that both the plaintiff and the said defendant intended that the pumps and tanks should not become a part of the realty, but should be installed for the temporary use and purposes of the plaintiff, under an express agreement which permitted the plaintiff, as tenant, to install the equipment upon the premises and to remove it upon the termination of the lease. Unless we are required to hold that the mortgagee, in a situation like this, may rightly claim such property notwithstanding the clearly expressed intention of the tenant and the owner-mortgagor that the property should be temporarily, not permanently, annexed to the realty, simply because it was annexed to the freehold and was adapted to the use or purpose to which the real estate was devoted, the contention of the defendants cannot be sustained. In *Fuller-Warren Co. v. Harter, supra,* upon which the defendants principally rely, it was held, under the facts of that case, that the character of the accession cannot be preserved by contract between the vendor and vendee of personalty as against the owner of a mortgage of the real estate existing when the annexation is made, who is not a party to such contract; that a contract between a vendor and vendee reserving title to personal property which is to be incorporated into the real estate of the latter as a permanent improvement thereof, such realty being incumbered by a mortgage and the mortgagee not being a party to the contract, is invalid as to the mortgagee. In that case it was sought to recover a furnace which had been installed in the house of a Mrs. Shurts under a contract guaranteeing the furnace to heat the house to a specific temperature under specified conditions, and providing that in the event of its failure so to do and notice thereof to the plaintiff, the latter should have the option either to make the furnace heat the house as guaranteed or remove the same. In that case it was said (p. 85) :

"As before indicated, the contract of sale contemplated physical annexation of the plant to and incorporation of it

with the building it was designed to heat as *a permanent improvement* thereof, reserving the right to remove it as a mere security against losing the property as well as the pay for it if it failed to satisfy the warranty. All the essentials to change the chattel character of the property to real estate were satisfied, viz.: physical annexation of one to the other, adaptation of the improvement to the use to which the realty is devoted, and intent of the person causing the annexation to make *a permanent improvement of the freehold.*"

In distinguishing *Walker v. Grand Rapids F. M. Co.,* *supra,* it was said in reference to the facts of that case (p. 92):

"There was no sale, conditional or otherwise. The owner of the apparatus did not part with the title or have any intention of adding the apparatus to the mill as a permanent improvement thereof, conditional or otherwise."

The court further said (p. 93):

"There being no intention to remove the chattel when it was attached to the realty, it passed to appellant under the mortgage, who acquired title by the foreclosure thereof, and this although it was capable of being removed without injury to the building."

So it fairly appears that the court, in determining the issues presented in *Fuller-Warren Co. v. Harter, supra,* specifically held that there was an actual intention to incorporate the furnace into the realty regardless of the conditional right reserved, and that the element of intent necessary to make the furnace a part of the realty was satisfied.

While the decision in the *Fuller-Warren Case* was obviously ruled by the analogous proposition that one could not reserve title to property permanently annexed to mortgaged realty, by means of a conditional contract, without the consent of the mortgagee (which is no longer the law of this state under the Uniform Conditional Sales Act, ch. 122, Stats., if the contract is properly filed and the goods are severable without material injury to the freehold. *People's*

*Savings & T. Co. v. Sheboygan M. Co.* 212 Wis. 449, 249 N. W. 527, 250 N. W. 385), and thereby to that extent approved the so-called Massachusetts rule, the law of that case does not rule this controversy which is between the mortgagee and the tenant of the mortgagor, and which involves trade fixtures installed for temporary purposes pursuant to an express agreement permitting their removal at the end of the term. It is our opinion that in a controversy like this the intention of the party or parties making the attachment of the trade fixtures should not be ignored and only "the external indications which show whether or not it belongs to the building as an article designed to become a part of it, and to be used with it to promote the object for which it was erected, or to which it has been adapted and devoted" should be considered, or that the controversy should be determined by "the inferences to be drawn from what is external and visible." *Hopewell Mills v. Taunton Savings Bank,* 150 Mass. 519, 23 N. E. 327.

We have never approved of the Massachusetts rule so broadly applied and do not feel impelled to do so now.

It is clear that the tanks and pumps were trade fixtures installed upon the premises by the plaintiff for temporary purposes connected with its business. *Shields v. Hansen, supra.* As before stated, this court has adopted a very liberal rule with respect to trade fixtures which permits tenants to remove them, even in the absence of express stipulation. *State ex rel. Hansen S. Co. v. Bodden,* 166 Wis. 219, 164 N. W. 1009; *Dougan v. H. J. Grell Co.* 174 Wis. 17, 182 N. W. 350; *Shields v. Hansen, supra.*

Trade fixtures are ordinarily installed or attached to the freehold by the tenant for his own use and for the purpose of promoting his business, and with no intention on his part or on the part of anyone that such trade fixtures shall become, as a result of mere annexation, a part of the freehold.

We are of the opinion that our liberal rule with respect to trade fixtures is sound and just, is promotive of business, fosters the leasing of premises, and works no injustice to prior or existing mortgagees who are protected in situations where such fixtures may not be removed without material or substantial injury to the freehold. To hold otherwise in this case would amount to holding that our very liberal rule as to trade fixtures has no application to situations where the freehold is in fact mortgaged and no consent of the mortgagee has been obtained permitting the tenant to remove them after they are once physically annexed. If that were declared to be the law, every prospective tenant who intends to install trade fixtures in premises leased by him would have to ascertain whether the premises were mortgaged and, if so, would have to obtain from the mortgagee an agreement permitting the removal of the trade fixtures upon the termination of his lease.

In this case where it clearly appears that the tanks and pumps were not sold to the mortgagor-owner of the premises; that they were installed upon the premises for the temporary purposes of the plaintiff; that there was no intention on the part of the plaintiff permanently to annex them to the real estate; and that they can be removed without material injury to the realty, we hold that they did not become fixtures subject to the lien of the Woolley mortgage.

We consider the following rule to be just: Where land is mortgaged and the mortgagor is not prohibited from leasing the premises, and the premises are in fact leased to one who installs therein or thereon trade fixtures for temporary purposes connected with his business or in furtherance thereof, which trade fixtures may be removed without material injury to the freehold upon the termination of the lease, removal of such trade fixtures should be allowed as against the mortgagee.

No other case has been found in which the same or a similar set-up of facts and circumstances has been considered.

The defendants next contend that the court erred in including in the judgment certain other personal property to which the defendants make no claim, and which they did not refuse to deliver to the plaintiff upon its demand. This assignment of error becomes unimportant in view of the conclusion reached as to the pumps and tanks. It probably was asserted to the end that no part of the judgment might be sustained in case the judgment as to the pumps and tanks was reversed.

The defendant La Crosse Super Auto Service, Inc., contends that the court erred in permitting the plaintiff to recover judgment against it on that part of its reply which was denominated a "counter-claim." While there is nothing in our statutes or rules which permits a party to interpose a counter-claim to a counter-claim, no objection by demurrer or motion to strike was made. The parties seem to have fully tried the issue presented by the counter-claim of the defendant La Crosse Super Auto Service, Inc., and the "counter-claim" of the plaintiff. Such issue had nothing to do with the issues raised by the pleadings in the replevin action, since the defendant La Crosse Super Auto Service, Inc., did not assert that it was holding the property mentioned in the replevin action as security for the payment of the rent or the commissions due it. It is held that under the circumstances the defendant's counter-claim should be regarded as a complaint and the plaintiff's reply as a counter-claim, and that the issue raised thereby was consolidated with the replevin action for purposes of trial. Thus viewed there was no prejudicial error.

*By the Court.*—Judgment affirmed.

FOWLER, J. (*dissenting*). The opinion of the court concedes that "if the gasoline pumps and tanks when installed

were common-law fixtures, then they were subject to the lien of the Woolley mortgage, and could not be removed without the consent of Woolley. *Fuller-Warren Co. v. Harter,* 110 Wis. 80, 85 N. W. 698." Thus the only difference between the parties is whether the tank and pumps were common-law fixtures.

There is great diversity among the cases as to what is a fixture, depending on whether the question arises between landlord and tenant, owner and lessee of a tenant, vendor and vendee, mortgagor and mortgagee, or mortgagee and tenant. The intent of the person who affixes the chattel to the realty, whether it be installed with intent to make it permanently a part of the realty or to remain only temporarily, is often controlling. But the effect of this intent depends on the relations between the parties making claim to the article affixed. *Strickland v. Parker,* 54 Me. 263, 265; *William Firth & Co. v. South Carolina L. & T. Co.* (C. C. A.) 122 Fed. 569, 578; *Tyler v. White,* 68 Mo. App. 607, 609; *McLain Investment Co. v. Cunningham,* 113 Mo. App. 519, 87 S. W. 605; *Young v. Chandler,* 102 Me. 251, 66 Atl. 539, 541; *Crumbley Grocery Co. v. Ferguson,* 159 Miss. 861, 132 So. 737, 738; *Northwestern Lumber & Wrecking Co. v. Parker,* 125 Minn. 107, 145 N. W. 964; *Marker v. Williams,* 39 Cal. App. 674, 179 Pac. 735, 736.

Intent between landlord and tenant is one thing. Intent between a tenant affixing an article to the realty and one purchasing the realty from the landlord is another thing. As between a tenant and such a purchaser, the nature of the affixation to the realty, and whether the thing affixed is of nature such as to be essential to the operation of the plant or structure to which it is affixed, are the controlling facts. The intent of the tenant in such case is of no import in absence of knowledge of the purchaser. If affixed to the soil so as to become a part thereof, especially if its nature is such as to be necessary or appropriate to the use or business to

which the premises are devoted, it then passes with the fee to the purchaser and the tenant has no right of removal. By the same token, the tenant has no right of removal as against the mortgagee of an existing mortgage. An article is a part of the realty, as between mortgagee and owner or tenant of the owner, when the external indications show that it belongs to the realty as an article designed to become a part of it and to be used with it to promote the object for which it was erected or to which it has been adapted and devoted. *Hope-well Mills v. Taunton Savings Bank,* 150 Mass. 519, 23 N. E. 327. Whatever is placed on land "subject to a mort-gage, by a mortgagor or those claiming under him, to carry out the purpose for which it was erected, and permanently to increase its value for occupation or use, becomes part of the realty, although it may be removed without injury to itself or to the [land] building." *Pierce v. George,* 108 Mass. 78.

The effect of the relationship between claimants to articles affixed to the freehold has been recognized in *Brunswick-Balke-Collender Co. v. Franzke-Schiffman R. Co.* 211 Wis. 659, 248 N. W. 178, where it is said:

"Cases cited involving fixtures as between landlord and tenant, seller and purchaser of chattels, and the like have little bearing upon the rights of third persons dealing with the property. As to them, they having no knowledge to the contrary, what is affixed to the real estate so as to become a part thereof is real estate regardless of how the person affixing it may have regarded it or how it may be regarded as between him and the one who owned the property when it was affixed, unless, in cases of conditional sales, the seller has so complied with the conditional sales law as to protect his reservation of title."

This court has held in similar situations that the intent of the one affixing the article to the realty is immaterial. Where one claiming title to land, but not the true owner

leases it to a tenant who erects upon it a shack to be used as a dwelling with intent to remove it at the end of his term and under agreement with his lessor that he may do so, although the structure be of wood and not set into the soil, the building is the property of the true owner of the land and may not be removed by the tenant. *Huebschmann v. McHenry,* 29 Wis. 655. And where an owner of summer resort property executes a chattel mortgage upon cottages resting on cement piers or posts, thus indicating his intent that the cottages be considered as chattels, and subsequently executes a real-estate mortgage on the land to one ignorant of the chattel mortgage duly recorded, the mortgagee of the land holds the property as against the chattel mortgagee. *Schmidt v. DuBois,* 201 Wis. 631, 231 N. W. 181. In the latter case, had the real-estate mortgage been executed prior to the execution of the chattel mortgage, the doctrine of the case would have applied with still stronger reason.

Thus as between owners or purchasers or mortgagees and persons with whom they have no contractual relations who affix chattels to land so that they are apparently a part of the realty, the intent of the persons affixing the chattels is immaterial, in absence of knowledge on the part of the owners, purchasers, or mortgagees. The nature of the affixation in every such case controls the rights of the parties. In such cases, that is a fixture which is "by reason of its annexation to the land, regarded as a part of the land, partaking of its character and belonging, in the ordinary case at least, to one having an estate in the land." . . . "The underlying principle . . . is, that whatever is annexed to the soil becomes part thereof." 26 C. J. pp. 651, 652.

"The term 'fixture' is generally used in reference to some originally personal chattel, which has been actually or constructively affixed either to the soil itself or to some structure legally a part of such soil. It has been defined as denot-

ing an article which was once a chattel, but which, by being physically annexed or affixed to the realty, has become accessory to it and part and parcel of it; or as signifying something so attached to the realty as to become, for the time being, a part of the freehold, as contradistinguished from a mere chattel; something annexed to a freehold for use in connection therewith; something so annexed to a freehold that it cannot be removed without injury to the freehold," etc. 11 R. C. L. p. 1058.

The freehold in the instant case consists of the land and the structures upon it including the pumps and the tanks. Removing the pumps and the tanks will constitute an injury to the freehold—not an injury that cannot be repaired,—but an injury nevertheless. Within all the definitions above quoted, and within the general acceptance of the meaning of the term, the pumps and tanks are common-law fixtures, and upon the concession in the opinion of the court above referred to, the mortgagee is entitled to hold them. He is so entitled under the law of the state as it existed when the mortgage in suit was executed and as it has existed for seventy-five years, ever since the decision of *Frankland v. Moulton*, 5 Wis. 1. The rule is a rule of property, as declared in the *Fuller-Warren Case, supra,* and, as such, should not be overthrown by the decision of the court. The mortgagee is entitled to his rights under the law as it existed when he took his mortgage and advanced his money for the purpose of having a fully equipped "super auto service" station constructed upon the land, and pumps and tanks are certainly a necessary part of the equipment of such a station. The plaintiff company is bound by the law as it then existed. Its rights are limited and the mortgagee's are fixed by that law. The court has no more right to deprive the mortgagee of his rights under that law—a rule of property—than it would have to deprive him of property rights fixed by any other law or by contract. The legislature may rightly change a rule of property if it sees fit to do so. But its change of the rule

does not affect rights established under the rule it changes. A court's change of the law, however, by reversal of an existing rule of property and adoption of a contrary rule, affects the established rights, not only of the parties to the suit, but of all others having like rights. I know of no concept of justice that warrants such action by any court. The change of the rule of property made by the court in the instant case is effected, not by disavowing the rule itself, but by changing the law of fixtures by holding that not to be a common-law fixture which by the common law was always considered to be a fixture, except as by the later decisions the law has been modified to the amelioration of the tenant when the rights involved are those between landlord and tenant. Except as between landlord and tenant, and as ameliorated in favor of the seller by the Uniform Conditional Sales Law (*People's Savings & T. Co. v. Sheboygan M. Co.* 212 Wis. 449, 249 N. W. 527, 250 N. W. 385), the concept of a fixture as something so affixed to the realty as to be a part of it has not changed. The change made by the decision of the court is thus a change of a rule of property as much as it would be had the court, instead of conceding the law to be as first stated in this opinion, directly overruled that law.

It may further be said in support of this position that it was stated in the opinion of the court, although it is *dictum,* in *Frankland v. Moulton, supra,* not only that if a mortgagor places fixtures upon mortgaged premises, they become a part of the freehold, and the mortgagor cannot remove them, but that if a tenant of the mortgagor places the fixtures, the result is the same; that the mortgagor cannot confer upon his tenant a privilege that he does not himself possess. See syllabi 1 and 2 of the opinion and page 6 of the opinion. If this statement be *obiter,* the reason of it, that the owner cannot confer upon his tenant, as against the mortgagee, a right that he does not himself possess, is applicable to and should rule the instant case. Had the mortgagor purchased and

installed the pumps and tanks, there could be no question that it could not remove them. It could confer upon its tenant no rights as to removal that it did not possess.

It seems very plain to me that the judgment of the circuit court should be reversed.

I am authorized to state that Mr. Justice FAIRCHILD concurs in this opinion.