OLD LINE LIFE INSURANCE COMPANY OF AMERICA, Appellant, vs. HAWN and another, Respondents.

*September 16—October 12, 1937.*

628

The cause was submitted for the appellant on the brief of *Olwell & Brady* and *George A. Gessner,* all of Milwaukee, attorneys, and *W. G. Haddow* of Ellsworth of counsel, and for the respondents on that of *Knowles & Doolittle* of River Falls.

NELSON, J. On April 21, 1922, Cassius D. Hawn, the husband of the defendant, Mary E. Hawn, was the owner of a certain farm in Pierce county. On that day he borrowed from the plaintiff the sum of $6,000. To evidence such indebtedness, he made, executed, and delivered to the plaintiff his promissory note, secured by a real-estate mortgage signed by him and the defendant Mary E. Hawn. Thereafter, he conveyed all of his interest in the farm to the defendant,

Mary E. Hawn, subject to the mortgage. On October 15, 1930, the defendant, Mary E. Hawn, leased the farm to the defendant, Ray Hawn, who entered into the possession thereof as tenant, and continued to occupy it until shortly before the foreclosure of the plaintiff's mortgage had been fully completed on November 15, 1935. Shortly after entering into the possession of the farm as a tenant, the defendant, Ray Hawn, installed at his own expense, in the cellar or basement of the house situated upon the farm, a pipeless furnace. He also installed in the barn seventeen steel stanchions, certain drinking cups for his stock, and certain pipe equipment. He also installed in the barn a hay carrier and a manure carrier. He also brought upon the farm a brooder house. Later on he erected upon the farm a hen house, garage, tool shed, and a maple-sugar shed, which housed certain equipment used by him in manufacturing maple syrup and sugar. Shortly prior to the time that the foreclosure proceedings were completed by confirmation of the sale, the defendant, Ray Hawn, either removed from said premises, or authorized others, who had purchased some of the properties from him, to remove, all of the above-mentioned properties. The plaintiff asserted that all of said properties were common-law fixtures by virtue of their attachment to the soil, that they were subject to the lien of its mortgage, and that the removal thereof constituted waste. The defendant, Mary E. Hawn, asserted that she was in no manner responsible for the removal of said properties by the defendant, Ray Hawn. The defendant, Ray Hawn, asserted that all of said properties were brought upon the premises by him as a tenant, and that he had the right to remove them at any time before the termination of his tenancy. The court found that all of said properties, with the exception of the maple-sugar house and equipment, were common-law fixtures subject to the lien of the plaintiff's mortgage, and not removable, and that the amount of the damages sustained by the plaintiff

was $700. The court further found, as to the defendant, Mary E. Hawn, that she at no time consented to the sale or removal of any of the properties mentioned.

The plaintiff contends that the court erred in finding, (1) that the maple-sugar house and equipment were properly removed; (2) that Mary E. Hawn knew little about what her son did on the farm, and that she at no time claimed or received any benefit from the removal of the fixtures; (3) that her business experience had been very limited; (4) that she was not aware at the time of the auction sale that the buildings and fixtures were sold, and that she did not consent to their sale; and (5) that she did not breach any duty to protect and preserve the premises covered by plaintiff's mortgage; and also in concluding, (1) that the defendant, Mary E. Hawn, was not liable to the plaintiff for the damages found, and (2) that the plaintiff's complaint should be dismissed as to her. The motion to review assails the judgment against the defendant, Ray Hawn, which is based upon the findings and conclusions of the court that all of the properties mentioned, with the exception of the maple-sugar house and equipment, were common-law fixtures subject to the lien of the plaintiff's mortgage and therefore not removable.

In view of our conclusion that all of the properties mentioned were removable by Ray Hawn as tenant, and never became subject to the lien of the plaintiff's mortgage, we need not discuss the contentions of the plaintiff relative to the defendant, Mary E. Hawn, since obviously if Ray Hawn had the right to remove the properties mentioned before or at the termination of his lease, there could be no liability on the part of Mary E. Hawn to the plaintiff for the removal of such properties.

It is undisputed that the relationship between Mary E. Hawn and Ray Hawn was that of landlord and tenant; that

all of the properties mentioned either belonged to Ray Hawn at the time he entered into the possession of the farm or were constructed by him upon it with his own funds and labor; that he had no intention of making said properties common-law fixtures, and always asserted his right to remove them from the premises at the conclusion of his term; that Mary E. Hawn had full knowledge of such intention and acquiesced therein, although expressing a doubt as to the right of Ray Hawn to remove all of the properties, especially the chicken house, should she lose the farm to the plaintiff on foreclosure, and that she consulted an attorney in reference to the matter of removing some of the properties, and was advised that Ray Hawn had such right.

It is our opinion that to such a situation the law of trade fixtures should be applied. This court has adopted a liberal rule with respect to trade fixtures brought upon, installed in, or erected upon, leased premises by tenants. *Shields v. Hansen,* 201 Wis. 349, 230 N. W. 51; *Zimmerman v. Treleven,* 192 Wis. 214, 212 N. W. 266; *Hanson v. Ryan,* 185 Wis. 566, 201 N. W. 749; *Brobst v. Marty,* 162 Wis. 296, 156 N. W. 195; *State ex rel. Hansen S. Co. v. Bodden,* 166 Wis. 219, 164 N. W. 1009; *Dougan v. H. J. Grell Co.* 174 Wis. 17, 182 N. W. 350; *Standard Oil Co. v. La Crosse S. A. Service,* 217 Wis. 237, 258 N. W. 791. In *State ex rel. Hansen S. Co. v. Bodden, supra,* p. 221, it was said:

"In the absence of express stipulation to the contrary the general rule is that improvements made by a tenant on demised premises in furtherance of the purposes of the lease may be removed by him before or at the expiration of the term, provided he leaves the premises in as good condition as he received them."

In *Dougan v. H. J. Grell Co., supra,* p. 24, it was said, regarding a building erected upon certain leased premises for the purpose of manufacturing butter and cheese therein, and

also regarding a dwelling house erected thereon as a residence for a butter and cheese maker:

"The structures erected and the machinery contained in the several buildings on the factory premises were suitable for and devoted to a business purpose. The tenant therefore needed no express stipulation in the lease to give him the right to remove, at or before the lawful expiration of his term, all of said fixtures and the machinery therein contained."

In *Shields v. Hansen, supra,* p. 352, it was said:

"The common law with reference to trade fixtures has been much modified in this country, so that the question of attachment to the soil or its adaptation for the purposes is not considered of so much importance as the intention of the parties at the time of the attachment of the fixtures to the premises. [Citing cases.] Accession to the realty must affirmatively appear, and the tenant needs no express stipulation in the lease to give him the right to remove the fixtures."

In *Standard Oil Co. v. La Crosse S. A. Service, supra,* the right of the plaintiff to remove gasoline pumps and tanks installed upon certain premises by it as a tenant, with the understanding with the owner that it might remove them upon the termination of its lease, was upheld as against a mortgagee whose mortgage was prior to the plaintiff's lease. It was there said, pages 244, 245:

"Trade fixtures are ordinarily installed or attached to the freehold by the tenant for his own use and for the purpose of promoting his business, and with no intention on his part or on the part of anyone that such trade fixtures shall become, as a result of mere annexation, a part of the freehold. We are of the opinion that our liberal rule with respect to trade fixtures is sound and just, is promotive of business, fosters the leasing of premises, and works no injustice to prior or existing mortgagees who are protected in situations where such fixtures may not be removed without material or substantial injury to the freehold. To hold otherwise

in this case would amount to holding that our very liberal rule as to trade fixtures has no application to situations where the freehold is in fact mortgaged and no consent of the mortgagee has been obtained permitting the tenant to remove them after they are once physically annexed. If that were declared to be the law, every prospective tenant who intends to install trade fixtures in premises leased by him would have to ascertain whether the premises were mortgaged and, if so, would have to obtain from the mortgagee an agreement permitting the removal of the trade fixtures upon the termination of his lease."

The following rule applicable to such a situation was thus considerately stated:

"Where land is mortgaged and the mortgagor is not prohibited from leasing the premises, and the premises are in fact leased to one who installs therein or thereon trade fixtures for temporary purposes connected with his business or in furtherance thereof, which trade fixtures may be removed without material injury to the freehold upon the termination of the lease, removal of such trade fixtures should be allowed as against the mortgagee." *Standard Oil Co. v. La Crosse S. A. Service, supra,* p. 245.

No case involving trade fixtures or fixtures in the nature of trade fixtures, put upon a farm by a tenant for the purpose of promoting agriculture, raising chickens, manufacturing maple sugar, or promoting the convenient care of a dairy herd, has been before us, but we perceive no just reason why the law as to trade fixtures should not be applied to tenants engaged in the production of milk, eggs, and poultry, maple sugar, or other farm products. Agriculture should be encouraged and fostered as much as trade and manufacture. There are, of course, cases whose holdings are to the contrary. *Elwes v. Maw,* 3 East (Eng.) 38; 2 Smith's Leading Cas. 189, decided in 1802. The supreme court of the United States at an early date questioned the soundness of the English rule. *Van Ness v. Pacard,* 2 Pet. (U. S.) 137, 144,

7 L. Ed. 374. After referring to the holding in the English case, Mr. Justice STORY, speaking for the court, said:

"The distinction is certainly a nice one between fixtures for the purposes of trade, and fixtures for agricultural purposes; at least in those cases, where the sale of the produce constitutes the principal object of the tenant, and the erections are for the purpose of such a beneficial enjoyment of the estate."

In 26 C. J. p. 703, after referring to the English case cited and the holding therein, it is stated:

"There are, however, in this country, quite a number of decisions where a contrary view has been expressed, based on the ground that it is a matter of public policy to encourage tenants to improve property for agricultural purposes as well as for trade purposes. Likewise an article annexed to a farm for the purpose of putting agricultural products in form or condition for the market has been regarded as removable as a trade fixture."

There is, in our opinion, no sound reason for applying one rule to tenants engaged in trade or manufacture and another to tenants engaged in agriculture. Such being our conclusion, this controversy is ruled by *Standard Oil Co. v. La Crosse S. A. Service, supra.* Any other holding would amount to a rank discrimination between tenants engaged in trade or manufacture and tenants engaged in agriculture.

The present controversy does not involve the right of a subsequent innocent purchaser or mortgagee of land without notice to claim as common-law fixtures buildings and equipment which from all appearances are permanently attached to the freehold. See Annotation, 58 A. L. R. 1352 *et seq.* That question is not here.

*By the Court.*—The judgment of the circuit court as to Mary E. Hawn is affirmed. The judgment of the circuit court against Ray Hawn is reversed, with directions to dismiss the complaint against him.

FOWLER, J. (*dissenting.*). I dissent from the greater part of the decision of this case for the reasons as plainly stated as I can state them in the dissenting opinion in *Standard Oil Co. v. La Crosse S. A. Service,* 217 Wis. 237, 258 N. W. 791. Although the drinking cups and stanchions as between landlord and tenant might be considered movable as trade fixtures, they were common-law fixtures, and, as such, subject to the plaintiff's mortgage. So of the track upon which the hayfork ran, but not of the fork and rope attached to it. The brooder house, maple-sugar shed, and hayfork and rope might properly be held movable under the common-law rule as to fixtures, because not so affixed to the realty as to become a part thereof. But by no stretch of imagination or law can the furnace in the house be wangled into a "trade fixture," and it could not be removed "without material injury to the freehold." It clearly became a part of the realty, and was subject to the mortgage. To cut a round hole in the living-room floor of the dwelling house on the mortgaged premises three or four feet across, as the installation of a "pipeless hot air furnace" required, and connect the register inserted to the furnace in the basement below with both the hot-air flue from the furnace and the cold-air jacket surrounding the furnace proper made the furnace as much a part of the realty as was the furnace in *Fuller-Warren Co. v. Harter,* 110 Wis. 80, 85 N. W. 698. That such things as the judgment herein purports to legalize removal of were subject to the plaintiff's mortgage had been the law of the state for seventy-five years when the *Standard Oil. Co. Case, supra,* was decided. That law was a rule of property. The plaintiff's rights were vested under that rule. The judgment of the court in that case did, and the judgment of the court in this case does, declare valid a deprivation of property without due process of law contrary to the Fifth amendment of the United States constitution.

I am of opinion that the judgment of the circuit court is correct so far as it holds the tenant responsible for removal of the property involved, except as to the brooder house and the hayfork and rope, and that the finding of the court that the owner of the farm did not participate in the removal, and the conclusion that she is not responsible therefor with the tenant, should be sustained. The judgment should be modified as to the two items next-above mentioned, and affirmed as modified, or the record remanded to ascertain the value of the two said items, and deduct their value found from the judgment if their value does not appear from the record.