**HOVER v CLAYTON, et**

Common Pleas Court, Logan Co

No 19643: Decided Aug. 12, 1939

## OPINION

By ZUPP, J.

This cause was submitted to the Court on a proposition of law involving the question of whether or not certain articles of property are chattels or fixtures. A restraining order preventing the removal of the property in question was granted by the Court when plaintiff's petition was filed. The facts are practically all admitted.

Ralph Center, et ux., several years ago executed a mortgage on certain real estate to The Northwestern Mutual Life Insurance Company, and a second mortgage on the same premises to the plaintiff herein, A. B. Hover. In the course of events the first mortgage was released on ten acres of the original tract conveyed, leaving the mortgagee, the plaintiff herein, owner of the first mortgage on the ten acres of land in question. The rights and priorities of these mortgagees are immaterial in this issue.

The defendant, Noah J. Elder, purchased from the Centers the ten acres in question, at which time the mortgage of A. B. Hover was in full force and effect and of record. The defendant, Elder, owner of the fee subject to the encumbrance mentioned aforesaid proceeded to improve the premises so purchased by the erection of certain structures upon the realty, including the installation of certain gasoline storage tanks, pumps, shelving, air compressor, air line, etc., utilizing a portion of said premises in the commonly referred to "filling station business."

In the course of events the plaintiff, Hover, instituted foreclosure proceedings against the premises and the defendant, Elder, in that proceeding, obtained a substantial judgment by way of subrogation. When the premises were offered for sale, by virtue of said foreclosure proceedings, the defendant, Elder, immediately before the sale, announced to the group assembled that said premises were to be sold subject to a lease executed by him and his wife in favor of the defendant, William E.

Clayton. The sale proceeded and this plaintiff purchased the premises by virtue of making the highest bid.

The evidence discloses that the defendant, Elder, purportedly executed the lease on or about November 1, 1935, after foreclosure proceedings had been instituted, and the same was not recorded until the day prior to the sale of the premises in question. The foreclosure proceedings were commenced in 1932 and the premises sold in late 1935.

The lease in question was introduced in evidence and discloses a conveyance of the ten-acre tract to the defendant, Clayton, beginning on the 1st day of November, 1935, and terminating on November 1, 1936, with an option of renewal for a period of four additional years. The instrument was received for record April 24, 1936, at 1:20 P. M., and was recorded the same day, this being the day prior to the court sale of the premises.

The evidence also discloses that the defendant, Elder, purportedly executed a bill of sale to the defendant, Clayton, whereby he attempted to convey certain gasoline tanks with all equipment for connection thereto, and all other property located on the realty. This instrument bears date of July 15, 1933. The foreclosure proceedings were commenced in 1932. In other words, the alleged lease and bill of sale were both executed after foreclosure proceedings were commenced. The items of property referred to in these instruments are the subject matter of this action. Certain items were released from the claims of the plaintiff during the trial, and the Court will make no further reference to these specific articles

The plaintiff instituted these proceedings, in part, to prevent the removal by Clayton of the items heretofore referred to. The Ohio courts have apparently accepted the view that injunction lies to prevent the wrongful removal of alleged fixtures from realty.

There seems to be a great diversity among all the reported cases as to what is a fixture, depending primarily

on whether the question arises between landlord and tenant, owner and lessee of a tenant, vendor and vendee, mortgagor and mortgagee, or mortgagee and tenant. A careful review of the cases indicates that the courts have generally stated that the most ▮▮▮▮▮▮▮▮ important consideration in determining the status of storge tanks and other equipment of a gasoline filling station is the intent of the parties at the time the equipment is installed of attached to the real estate. Nevertheless, they disclose a marked tendency to decide each individual case on its own facts.

There is little dispute as to the manner by which the articles in question were annexed or attached to the realty. The evidence fully discloses that the articles of property were attached in the usual manner which characterizes the construction and operation of gasoline filling stations.

In Standard Oil Company v LeCrosse Super Auto Service, et al, 258 N. W. 791, decided by the Supreme Court of Wisconsin February 5, 1935, we note the following language in the syllabus:

"Whether articles of personal property are 'fixtures' is determined by whether there is actual physical annexation to real estate, application or adaption to use or purposes to which realty is devoted, and intention by person making annexation to make permanent accession to freehold, but matter of physical annexation is relatively unimportant and intention of parties is the principal consideration."

Where chattels are annexed to land under such circumstan- ▮▮▮▮▮▮ ces as to stamp them with the attributes of fixtures, it makes no difference that such annexation is made subsequently to the execution of a mortgage on the realty; as between the mortgagor and mortgagee, or their successors, the chattels become subject to the lien of the mortgage, unless the mortgagor and mortgagee agree that, although affixed

to the realty, they may retain their chattel nature. This seems to be the general rule and was early adopted in Ohio. A recent Ohio case affirms the rule.

The Court is of the opinion that the articles in question were physically annexed to the realty by the owner of the fee subsequent to the execution of a realty mortgage on the premises.

In 99 A.L.R. 144, we observe the following language:

"The rule stated in the earlier annotations, that any chattel which is owned by the mortgagor of real estate, and which, after the execution of the mortgage, he annexes to the realty so that it becomes a part thereof, becomes subject to the mortgage, even though not mentioned therein, has apparently been assumed by the more recent decisions."

Elder was not the original mortgagor, but purchased the premises from the mortgagor at the time the mortgage was a valid and existing lien thereon. The Court sees no distinction between the status of an original mortgagor and a mortgagor's successor by transfer, assignment, or otherwise.

On page 796 of 258 N. W. 791, previously referred to, we note the following language:

"Thus as between owners and purchasers or mortgagees and persons with whom thew have no contractual relations who affix chattels to land so that they apparently are a part of the realty, the intent of the persons affixing the chattel is immaterial, in absence of knowledge on the part of owners, purchasers, or mortgagees."

The Court found in Cassily v Rhodes, 12 O. 88, that a mortgagor in possession has the power to lease the mortgaged premises, but, as in jurisdictions generally, such a lease is not binding upon the mortgagee unless he consented thereto.

In 209 N. W. 801, we observe that it has been held that, where the owner

of land annexes gasoline tank and pump to realty, the presumption follows that he intends they shall become a part of the realty.

In **Bridwell v Barcroft, 2 O. Dec. Rep. 697**, and in **Moran v P. C. & St. L. RR Co., 5 O. F. D. 412**, the Court find that a lessee under a lease made after the premises are mortgaged, without the mortgagee's consent, is not, after the condition of the mortgage is broken, a tenant of the mortgagee, because there is no agreement between them to such effect.

In **Tooker v Grotenkemper, 13 O. Dec. Rep. 433**, and in **Frische v Kramer, 16 O. 125**, the Court find that after condition broken, the mortgagee has the right of possession against a lessee under a lease made after the mortgage is made, and a purchaser at a foreclosure sale has the same right of possession.

In **2 Abs 634**, we observe that whether or not an article is a fixture should be raised at the earliest possible moment, especially if the rights of third persons may intervene: and the right to raise the question may be lost by not raising it at the proper time.

**Sec. 11300, GC**, provides that "when the summons has been served, or the publication made, the action is pending so as to charge third persons with notice of its pendency. While pending, no interest can be acquired by third persons in the subject of the action, as against plaintiff's title." This statute includes foreclosure proceedings.

The defendant, Clayton, admits that he knew foreclosure proceedings had been instituted when the lease and bill of sale were executed. Foreclosure proceedings were instituted in 1932. There is some evidence of transactions between the defendant, Elder, and third parties covering the articles of property in question, but the evidence further discloses that the plaintiff was not a party to these transactions.

The Court is of the opinion, from the evidence, that Elder, as owner of the fee physically annexed the items in question to the realty; that at that time the plaintiff's mortgage was in full force and effect; that the plaintiff did not agree with the owner of the fee that the annexed property was to remain chattel property; that said items are fixtures and part of the realty in question; that the mortgagee was not a party to the lease and bill of sale.

Borrowing the language of the Court in **Vinton County National Bank v Hunt, et, 14 OO 347**, the Court is of the opinion that, to hold otherwise would be to open a door to the validation of secret liens and fraudulent practices of a nature too broad, in this world of commercial credit and merchandising, to be within the conception of the imaginative mind, and would result in defeat of the very purposes of the legislature in enacting the laws concerning the recordation of liens on property left in the hands of persons against whom the liens are intended to operate.

Accordingly, the restraining order is made permanent. Other questions as to rentals and damages are reserved for jury trial.

Additional authorities considered: **15 Oh St 446; 106 Oh St 577.**