Charles E. O'MALLEY, Claude C. Alexander and Peter G. Farrow, as Executors of the Will of Edward H. Fabrice, Deceased, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

No. 58 C 76.

United States District Court
N. D. Illinois, E. D.

Aug. 2, 1963.

Thompson, Raymond, Mayer, Jenner & Bloomstein, Chicago, Ill., for plaintiffs.

James P. O'Brien, U. S. Atty., Northern Dist. of Illinois, Chicago, Ill., for defendant.

CAMPBELL, Chief Judge.

Edward H. Fabrice (hereinafter referred to as "Fabrice") died a resident of Illinois on October 13, 1949. Prior to his death Fabrice had created five irrevocable trusts naming himself and two other persons as co-trustees. The trust instruments were identical except for the names of the beneficiaries and the property transferred. Fabrice's daughter Janet was the beneficiary of two of the trusts, his daughter Lorraine was beneficiary of two others and his wife was to receive the benefit from the fifth trust.

During his lifetime Fabrice orally leased, occupied and paid rent to his daughters for three Wisconsin farms beneficially owned by them. The daughters owned the farms by virtue of conveyances made to them by Fabrice. As a tenant Fabrice erected certain buildings and other improvements on the farms, for which he took depreciation deductions on his federal income tax returns.

After the death of Fabrice and the filing of his federal estate tax return, the Commissioner of Internal Revenue determined his estate tax liability should have been $80,726.36. The estate tax re-

turn having showed no such tax due, a deficiency of $80,726.36 was assessed.

The items added to Fabrice's gross estate by the Commissioner were as follows:

(a) Janet Fabrice Trust No. 1

| | | | |
|---|---|---|---|
| 75 | shares of Fabart Company stock | | |
| 75 | shares of Fabart Company stock given to the trust by Fabrice | | |
| 112 | shares of Fabart Company stock purchased by the trust | | |
| —— | | | |
| 187 | shares at $200 each | $37,400.00 | |
| | Cash | 805.29 | $ 38,205.29 |

(b) Lorraine Fabrice Trust No. 1

| | | | |
|---|---|---|---|
| 75 | shares of Fabart Company stock given to the trust by Fabrice | | |
| 112 | shares of Fabart Company stock purchased by the trust | | |
| —— | | | |
| 187 | shares at $200 each | $37,400.00 | |
| | Cash | 7,615.95 | $ 45,015.95 |

(c) Janet Fabrice Trust No. 2

| | | | |
|---|---|---|---|
| 101 | shares of Fabart Company stock given to the trust by Fabrice | | |
| 152 | shares of Fabart Company stock purchased by the trust | | |
| —— | | | |
| 253 | shares at $200 each | $50,600.00 | |
| | Cash | 12,987.72 | $ 63,587.72 |

(d) Lorraine Fabrice Trust No. 2

| | | | |
|---|---|---|---|
| 101 | shares of Fabart Company stock given to the trust by Fabrice | | |
| 152 | shares of Fabart Company stock purchased by the trust | | |
| —— | | | |
| 253 | shares at $200 each | $50,600.00 | |
| | Cash | 12,597.35 | $ 63,197.35 |

(e) Martha G. Fabrice Trust

| | | | |
|---|---|---|---|
| 101 | shares of Fabart Company stock given to the trust by Fabrice | | |
| 152 | shares of Fabart Company stock purchased by the trust | | |
| —— | | | |
| 253 | shares at $200 each | $50,600.00 | |
| | Cash | 16,134.85 | $ 66,734.85 |

(f) Farm Improvements ............. . $ 37,000.00

$313,741.16

Of the $313,741.16 added by the defendant to Fabrice's gross estate, $186,141.16 represents property acquired by the trustees from income generated by the trusts subsequent to their creation.

In August 1954 plaintiffs paid to the Director of Internal Revenue the amount of the claimed deficiency together with interest of $16,774.49, or a total of $97,500.85. In August 1956 plaintiffs filed

a claim for refund of the $97,500.85 with interest thereon. The District Director disallowed this claim in April 1957, whereupon in May 1957 plaintiffs filed a protest. In September 1957 the Office of the Regional Commissioner sent to plaintiffs a notice of formal disallowance of their claim.

Three separate questions are presented by the above facts: (1) Was Fabrice's right, as a co-trustee, to distribute or accumulate income of the trusts governed by a definite external standard and thus not a power to designate the persons who would possess or enjoy the income as set forth in Title 26 U.S.C. § 811(c) (1) (B) (ii) and (d) (1)? (2) Is income derived from the transferred property subsequent to the transfer excludable from the above mentioned statutes? (3) Did Fabrice maintain "possession or enjoyment" of the farm improvements as contemplated by Title 26 U.S.C. § 811 (c) (1) (B) (i)?

I now consider the first issue; whether Fabrice's power to distribute or accumulate the income of the trust brought the trust within the terms of § 811(c) (1) (B) (ii) and/or (d) (1).

Paragraph (a) of Article II of each of the five trusts vests in Fabrice the power to distribute or accumulate the income of the trusts. The Article and Paragraph provide:

"Article II

"The trust estate shall be distributed both as to income and principal in the following manner:

"(a) The net income from the Trust Estate shall be paid, in whole or in part, to my (herein the beneficiary was named), in such proportions, amounts and at such times as the trustees may, from time to time, in their sole discretion, determine, or said net income may be retained by the trustees and credited to the account of said beneficiary, and any income not distributed in any calendar year shall become a part of the principal of the Trust Estate."

It is the contention of the Government that the language above had the effect of permitting the settlor, Fabrice, to designate the persons who would enjoy the income and to alter the trust within the meaning of § 811(c) (1) (B) and (d) (1) of the Internal Revenue Code of 1939. This statute provides what property shall be included in a decedents gross estate. As far as material here paragraph (c) [as amended by Section 7(a) of the Act of October 25, 1949, c. 720, 63 Stat. 891], relating to transfers in contemplation of, or taking effect at death, provides:

"(1) *General rule.* To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

"(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; or"

Paragraph (d) relating to revocable transfers provides:

"(1) *Transfers after June 22, 1936.* To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bonafide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any

change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death;"

The government's basic contention is supported by Industrial Trust Co. v. Commissioner, 165 F.2d 142 wherein the Court of Appeals for the First Circuit affirmed (and in part reversed and remanded but on other grounds), a Tax Court decision reported as Estate of Budlong v. Commissioner, 7 T.C. 756, and 8 T.C. 284. The Tax Court had held that the power reserved by a decedent, as trustee, to accumulate or distribute the income at his discretion, amounted to a power to designate the persons who should possess or enjoy income within the meaning of § 811(c), and as such was includable in the gross estate. Further, in construing § 811(d), the Supreme Court in Commissioner v. Estate of Holmes, 326 U.S. 480 at 487, 66 S.Ct. 257 at 260, 90 L.Ed. 228 stated:

"It seems obvious that one who has the power to terminate contingencies upon which the right of enjoyment is staked, so as to make certain that a beneficiary will have it who may never come into it if the power is not exercised, has power which affects not only the time of enjoyment but also the person or persons who may enjoy the donation. More therefore is involved than mere acceleration of the time of enjoyment. The very right of enjoyment is affected, the difference dependent upon the grantor's power being between present substantial benefit and the mere prospect of possibility, even the probability, that one may have it at some uncertain future time or perhaps not at all. A donor who keeps so strong a hold over the actual and immediate enjoyment of what he puts beyond his own power to retake has not divested himself of that degree of control which Section 811(d) (2) requires in order to avoid the tax."

It is obvious that the Court in construing § 811 does not concern itself with property law relating to vesting of ownership, but, is interested only with who had the actual economic benefit. See also, Lober v. United States, 346 U.S. 335, 74 S.Ct. 98, 98 L.Ed. 15.

Plaintiff calls the Court's attention to the case of Jennings v. Smith, 2 Cir., 161 F.2d 74. The court in the Jennings case held that a right to alter a trust by the exercise of a power to accumulate was not within the ambit of § 811(d) where such power was circumscribed by a definite external standard. I acknowledge this to be an accurate statement of the law, however, the trust in the Jennings case made the power to invade the capital subject to the trustee's determination " * * * that such disbursement is reasonably necessary to enable the beneficiary in question to maintain himself and his family, if any, in comfort and in accordance with the station in life to which he belongs." Also the power to invade the capital was exercisable if the beneficiary or his issue " * * * should suffer prolonged illness or be overtaken by financial misfortune which the trustees deem extraordinary." The wording of the Jennings trust make it distinguishable from the Fabrice trusts. The wording of the Fabrice trusts do not recite definite ascertainable standards restricting the trustees' right to accumulate or distribute. The exercise of this power being left to the unbridled discretion of Fabrice, the trusts are absent any perceptible standard.

Moreover, plaintiff's contention that the required external standard is imposed generally by the law of Illinois is without merit. The cases cited by plaintiff clearly set out fundamental principles of trust law: that a trust requires a named beneficiary; that the legal and equitable

estates be separated; and, that the trustees owe a fiduciary duty to the beneficiaries. These statements of the law are not particular to Illinois. Nor do these requirements so circumscribe the trustee's powers in an otherwise unrestricted trust so as to hold such a trust governed by an external standard and thus excludable from the application of § 811(c) and (d). Thus, the Commissioner of Internal Revenue properly included the trusts in decedent's gross estate.

■ I now consider the second issue; whether the income derived from the initial trust corpus should be distinguished from the corpus itself, and as such excluded from decedent's gross estate.

This question has been unequivocally decided by our Court of Appeals. In Commissioner of Internal Revenue v. McDermott's Estate, 7 Cir., 222 F.2d 665, 55 A.L.R.2d 410, the Court had before it a factual situation not unlike the one presently before me. The Court in affirming a Tax Court decision held that accumulated trust income, inasmuch as it was not part of the property transferred at the time of the creation of the trust, should not be included in a decedent's gross estate notwithstanding the proper inclusion of the trust corpus. The McDermott decision was recently cited with approval and followed by the 6th Circuit Court of Appeals in Michigan Trust Co. v. Kavanagh, 284 F.2d 502, (Reversing D.C., 171 F.Supp. 227).

Although I am required to follow the conclusions of law stated therein I wish to note my own disagreement with the McDermott case. The Court of Appeals in deciding McDermott cited and acknowledged their reliance upon Gidwitz v. Commissioner, 14 T.C. 1263, affirmed, 7 Cir., 196 F.2d 813, and Burns v. Commissioner, 9 T.C. 979, affirmed, 5 Cir., 177 F.2d 739. In both Gidwitz and Burns, the former a 7th Circuit case, the Courts had before them factual situations distinguishable from this and the McDermott case. Gidwitz and Burns

concerned themselves with transfers in contemplation of death. (Title 26 U.S.C. § 811(c).)

The Courts there concluded that decedent's transfer of the property was valid and complete at the time of its inception, but, that the property transferred, which would not include subsequent income, was, because of the motive of the taxpayer in making the transfer, includable in his gross estate. By contrast, the facts in the McDermott case and those presently before me concern themselves with situations wherein the decedent had been deemed to have retained excessive controls and power over trust property. (Title 26 U.S.C. § 811(d) (2).) Because of such a retention of benefits the transfer is held to be incomplete until the decedent's death. Accordingly, if the transfer was ineffective then the trust property was properly included in decedent's estate at the time of his death, (this relates back to our first issue), and also the income generated therefrom in my opinion should properly have been included.

But, notwithstanding my own beliefs on this matter, I, in obedience to the law of *stare decisis* and to my duty to follow the law of this Circuit as enunciated by our Court of Appeals, subjectively adhere to the Court's decision in the McDermott case. I therefore hold that the Commissioner of Internal Revenue improperly included in decedent's gross estate the sum of $186,141.16, which sum represents the property acquired by the trustees from income generated by the trusts subsequent to their creation.

■ I now consider the third issue, whether in placing and maintaining improvements on his leasehold Fabrice can be said to have retained "possession and enjoyment" over the improvements. This question resolves itself on the intended meaning of the terms "possession and enjoyment" as those terms are used in § 811(c) (1) (B) (i) of Title 26 U.S.C.

The Commissioner of Internal Revenue in determining Fabrice's estate tax lia-

bility added to the gross estate the value of the farm improvements. The apparent basis for this determination was the Commissioners reliance upon the wording of § 811(c) (1) (B) (i).

I find, that the literal terms of the Statute are clear and unambiguous. In the absence of finding a legislative desire or intention to limit the meaning or interpretation of these terms so as to restrict the application of the Statute, I must apply the Statute as objectively written. Fabrice did retain possession and enjoyment of the improvements for a period which did not end before his death, and accordingly I find the Commissioner properly included the improvements in his estate.

Further, following the law of the *situs* of the property, Wisconsin, these improvements which included farmhouse, garages, barns, silos and various service facilities would probably be properly classified as trade fixtures. Old Line Life Insurance Company of America v. Hawn, 225 Wis. 627, 275 N.W. 542. Trade fixtures, as is the case with fixtures *per se*, are property so affixed to the land as to become an integrated part thereof. However, that which a tenant attaches to the land for the purpose of carrying on his business or trade is properly classified as a trade fixture and is treated as an exception to the law relating to fixtures. A recognition of this exception to the law of fixtures is based on a public policy intended to foster trade. A tenant has the right to remove trade fixtures prior to his surrendering possession. This right is subject to the tenant's being liable for injury to the land resulting from the removal. In the above cited Hawn decision the Supreme Court of Wisconsin, acknowledging some authority to the contrary, held that public policy encourages the promotion of agriculture as well as any other trade or business, and held that houses and equipment erected or brought on a farm by a tenant to further agricultural purposes were trade fixtures. Accordingly, Fabrice's improvements, which he as a tenant brought on the property

for agricultural purposes, were trade fixtures. As such they could have been removed by him during his lifetime or by his estate after his death. He did retain possession and enjoyment of the improvements.

In accordance with the above findings the District Director of Internal Revenue is ordered to refund together with interest thereon that portion of plaintiff's deficiency claim payment which was based on the $186,141.16 of property which resulted from income generated by the trusts subsequent to their creation. Counsel are directed to compute this amount and submit a judgment form within thirty (30) days to the Court for entry.