UNITED SHOE REPAIRING MACHINE COMPANY, Appellant, vs. ASOUMANAKIS and another, Respondents.

*June 3—June 23, 1920.*

*Sales: Conditional sale or lease of personal property: Transfer of title.*

1. A contract between a shoe-repairing machine company and a customer which expressly reserves title to certain machinery in the company, is construed to create a bailment only and to be a lease or license of the machinery and not a conditional sale.

2. The lessee or licensee of the machinery, having no title himself, could pass none by direct sale, and none could pass by virtue of a sale under an execution against him.

APPEAL from a judgment of the circuit court for Crawford county: GEORGE CLEMENTSON, Circuit Judge. *Reversed.*

The plaintiff corporation sought to obtain possession by writ of replevin of certain shoe-repairing machines from the defendants. Defendants claimed to be the owners thereof by virtue of purchase at a sale on July 6, 1918, upon an execution issued upon judgments obtained by the defend-

ant *Asoumanakis* and two other persons as plaintiffs against one William Schlifkin.

In November, 1917, said Schlifkin gave an order to the plaintiff for a lease to him of the shoe-repairing outfit here involved. In compliance with such order a written agreement was made dated December 5, 1917, and the outfit was delivered to Schlifkin pursuant to such agreement. The material parts of such written agreement were in substance as follows: The plaintiff leased to and licensed the said Schlifkin as licensee under any letters patent belonging to the plaintiff or under which it had the right to grant such license affecting any inventions which then or thereafter may be embodied therein or implied in the operation thereof, to use the machines designated.

The conditions which the said Schlifkin as licensee covenanted and agreed to keep and perform included, among other things: The leased machinery shall at all times remain and be the sole and exclusive property of the plaintiff, and the licensee shall have no right of property therein but only a right to use the same upon the conditions in said lease contained; the leased machinery shall be used only by the said licensee himself or by operators in his direct employ and only on the premises then occupied by him in Prairie du Chien, said state of Wisconsin. The leased machinery shall not be transferred or delivered or sublet to any other person or corporation, and neither the lease nor the license hereby granted can be assigned by the licensee by his own act or by operation of law.

The said licensee was further required to keep the leased machinery in good and efficient working order and condition and not permit any one to injure or deface or remove any plate or dates, numbers, or other inscriptions then or afterwards to be impressed on or affixed to such machinery. (The testimony disclosed that there were such plates upon these machines describing them as plaintiff's property.)

The licensee shall pay all taxes and assessments which

shall be assessed upon such machinery. The licensee agreed to pay to the plaintiff upon the execution of the lease, as an initial license fee, the sum of $345 in subsequent monthly payments, and also pay to the plaintiff on the last day of each calendar month the sum of twenty-four cents for each one thousand revolutions made during the preceding calendar month by the main shaft of one of such machines so leased. That the lease and license granted in respect to such machines shall continue, unless sooner terminated by the plaintiff because of breach thereof on the part of the licensee or as otherwise therein provided, for seventeen years from the date of the lease.

Article 7 provided that it should be subject to termination by the plaintiff as follows:

(a) By the plaintiff at any time giving thirty days' notice in writing to the licensee.

(b) In case of breach or default in the observance of the conditions in said lease; or if the licensee shall become insolvent or bankrupt or makes or executes any bill of sale, deed of trust, or assignment for the benefit of creditors; or if a sale, mortgage, lease, or removal of the leased machinery be made or attempted, or if distress, execution, or attachment be levied thereon, then plaintiff shall have the right by written notice to terminate forthwith such lease.

That if upon the expiration of the full term of the agreement the plaintiff does not request the return of the leased machinery, then it shall continue to be held and used in accordance with the conditions and provisions in the agreement and the same shall be extended indefinitely as to terms, but thereafter either the plaintiff or the licensee may terminate the same by giving to the other thirty days' written notice.

The licensee agreed that upon the termination in any manner whatever of the lease the licensee should forthwith deliver such machine to the plaintiff at Beverly, Massachusetts.

That in the event of termination by the *United Company* at any time within five years from the date of such lease solely under the provision of paragraph (a) of article 7 quoted above, but not in the exercise of any other right of termination, then the plaintiff shall credit or repay to the licensee such proportionate part of the sum paid by the licensee to the plaintiff as an initial license fee upon the grant of the license as the unexpired portion of said period of five years from the date of the lease bears to the entire period of five years. Authority was given by the tenth paragraph to the plaintiff or its agents to enter upon the premises where such machine may be and take possession and remove the same.

The machinery was installed in Schlifkin's place of business at Prairie du Chien and used by him and he made payments thereunder until on or about May 19, 1918, when he abandoned the premises and does not appear to have been heard from thereafter.

May 28th the machines involved and other property of Schlifkin's were levied upon under an execution obtained by the defendants and others in actions as above stated.

Subsequent thereto representatives of the plaintiff called on the defendants and an order was given by defendant and a new lease executed of the same machines on June 19, 1918, although such respective instruments are dated in the following September.

July 6th a sale was had on the execution and ostensibly sold to one Fotos for $208, and on the same day he included these machines with other personal property in a bill of sale to defendant *Asoumanakis* for the stated price of $500. Payments were made thereafter to plaintiff by defendants, who remained in possession of these machines and on the same premises theretofore occupied by Schlifkin until March, 1919, when for then default in payment plaintiff gave notice in writing of the termination of the lease; and on April 2d this action was commenced.

A jury trial was waived, and the court found from the testimony that the instrument in question between plaintiff and William Schlifkin should be treated as a conditional sale under sec. 2317, Stats., and void for a default in filing the same in the proper office.   That the execution levy on such property as being Schlifkin's was valid and the sale thereunder gave good title.   That Schlifkin ostensibly appeared to be the sole owner and considered that he had purchased the property and was such sole owner.   That the attaching creditors believed that Schlifkin was such sole owner of the shop equipment and a person of means.   That the plaintiff in 1917 entered into the contract with Schlifkin for the purpose of selling the property to him and that Schlifkin then believed that such lease was a bill of sale; that Schlifkin was to pay $345 in monthly instalments which were designated rent, and that when said $345 was paid no further payments were expected.   That plaintiff had due notice of the attachment in May, 1918, and that it was sold on execution sale without notice of any claim by plaintiff.

As conclusions of law the court found that the plaintiff was guilty of laches in the transaction and should not be permitted to assert title to the property under the lease, and that the defendant *Asoumanakis* was therefore entitled to possession of the property by virtue of his purchase at the execution sale.

From the judgment entered in accordance with such findings the plaintiff has appealed.

For the appellant there were briefs by *Munson & Curran* of Prairie du Chien and *Bottum, Bottum, Hudnall & Lecher* of Milwaukee; and the cause was argued orally by *Geo: B. Hudnall* and by *Walter Bates Farr* of Boston.

*Alvin B. Peterson* and *J. P. Evans,* both of Prairie du Chien, for the respondents.

Eschweiler, J.   We have set out above at considerable length the contract between Schlifkin and the plaintiff con-

cerning the machines in question for the reason that it was the view of the trial court that such agreement was in substance a conditional sale, and, not having been recorded pursuant to the provisions of the then existing sec. 2317, Stats., was void as to subsequent purchasers from Schlifkin.

We shall not take up the different elements of the contract in detail, but an examination of the same is sufficient to show that on its face it was not a conditional sale but a lease or license merely, and that title was expressly reserved to and continuously remained in the plaintiff. It was a bailment only, and the relationship between plaintiff and Schlifkin was not that of vendor and vendee. There is no testimony to impeach the transaction between plaintiff and Schlifkin, he not being a witness, or to contradict the express terms of the writing. It was such a valid agreement as the parties might make and conveyed no title to the personal property involved to Schlifkin. 6 Corp. Jur. 1086; *McKay v. Mace,* 23 Fed. 76; *Baker v. Priebe,* 59 Neb. 597, 81 N. W. 609; *Singer M. Co. v. D. Wolff & Co.* 70 N. J. Law, 127, 56 Atl. 147.

Having no title himself, none could pass either by sale directly from him or by virtue of the sale in July under the execution. *Monitor M. Co. v. Jones,* 96 Wis. 619, 72 N. W. 44; *Ford M. Co. v. Maeder,* 171 Wis. 263, 177 N. W. 39; *Carney v. Emmons,* 9 Wis. 114, 116; 17 Cyc. 1299; 10 Ruling Case Law, 1324; *Buxton v. Pennsylvania L. Co.* 221 Fed. 718, 721; *Mitchell v. Hawley,* 83 U. S. (16 Wall.) 544, 550.

There is no evidence here which would warrant a finding of any fraud by Schlifkin in the nature of pretended ownership of said articles to secure credit, much less anything akin to fraud participated in by plaintiff which prevents it asserting ownership.

Considerable reliance seems to have been placed by the trial court upon a conversation between one of the plaintiff's representatives and the defendants and their attorney

some months after the execution sale in July, 1918, and a short time before the commencement of this action, in which it is claimed that such representative stated that if the balance, then amounting to a considerable sum, of the initial license payment under the agreement with Schlifkin would be paid, the defendants would then own the machines. There is, however, no showing that such representative had any authority to make such a representation or to vary the terms of either the lease which had been executed between plaintiff and Schlifkin and subsequently canceled, or the subsequent lease between plaintiff and the defendants, made prior to the execution sale. In any event the payment of such balance was not made and the entire conversation is therefore immaterial.

This view of the case makes it unnecessary to consider the other questions discussed on this appeal. It follows therefrom that under the testimony in this case the plaintiff was entitled to the possession of the personal property involved.

*By the Court.*—Judgment reversed, and action remanded with directions to enter judgment for the plaintiff.