BRADLEY, Appellant, vs. HARPER, Respondent.

*November 19—December 14, 1920.*

*Bailment: Implied agreement to return property: Evidence: Conversations out of presence of party: Witnesses: Cross-examination as to political declarations: Instruction.*

1. In an action for the value of radiators loaned to defendant, manager of a political campaign, evidence on his behalf as to portions of conversations between him and his representative, who borrowed the radiators, which did not occur in plaintiff's presence and which tended to show that they were borrowed by defendant on behalf of a campaign committee, was inadmissible against plaintiff.
2. Where plaintiff had testified that he did not recall a conversation in which he stated that he desired defendant's candidate to win, it was improper for the court to permit a question asking whether defendant did not state that he wanted to see the Socialists cleaned out, since the effect of that question was to prejudice plaintiff in the minds of any Socialists who might be on the jury.
3. In order to constitute a bailment there must be an express or implied agreement to redeliver the property when the purpose of the bailment has been fulfilled.
4. An instruction that the burden was on plaintiff to satisfy the jury that the defendant agreed to return the radiators was erroneous as requiring plaintiff to prove an express agreement to return, where the evidence tended to show facts from which an agreement to return would be implied.

APPEAL from an order of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge.   *Reversed.*

This action was brought in the civil court of Milwaukee county to recover the value of six iron steam radiators which it was alleged plaintiff loaned to the defendant and which the defendant failed to return.

The case was tried before a jury, resulting in a verdict

for the defendant. The plaintiff appealed to the circuit court, where the judgment of the civil court was affirmed. From the order of the circuit court affirming the judgment of the civil court plaintiff brings this appeal.

The cause was submitted for the appellant on the brief of *Curtis & Mock* of Milwaukee, and for the respondent on that of *Lorenz & Lorenz* of Milwaukee.

OWEN, J. The evidence on the part of the plaintiff was to the effect that in the month of January, 1916, he was a wrecking contractor and president of the American Wrecking & Salvage Company. Sometime during that month the defendant called him on the telephone and requested the loan of a number of radiators for use at No. 1 Grand avenue, which was being used for the "Bading Headquarters," stating that he, the defendant, would be responsible for their return, and that pursuant to such request on the part of the defendant the plaintiff delivered six steam radiators to said No. 1 Grand avenue, which have never been returned.

*Harper,* the defendant, who at the time in question was inspector of buildings for the city of Milwaukee, denies that he had any such conversation with *Mr. Bradley.* Harry Booth, a witness on the part of the defendant, testified that during January, 1916, he was deputy inspector of buildings in the city of Milwaukee under the defendant. He testified that at the direction of *Mr. Harper* he telephoned to *Mr. Bradley* or someone in his office that the Bading campaign committee wanted a loan of four or five radiators for use in the building at No. 1 Grand avenue, and asked them to let *Mr. Harper* know if they could be obtained from them; that "a few days later *Mr. Bradley* phoned and said that it was all right; we could have the radiators; he wanted to know how many we required—that I did not know. I said I would tell *Mr. Harper,* and that closed our conversation.

I was talking with *Mr. Bradley* at that time." Later the witness Booth was recalled and examined as follows:

"*Q.* Mr. Booth, at the time you had this telephone conversation with *Mr. Bradley's* office, or the office of the American Wrecking Company, how was it brought about that you had that conversation; how did it happen? I am speaking now of the first conversation that you had with the company where you made inquiries regarding radiators? *A.* I was directed by *Mr. Harper* to make inquiry of the American Wrecking & Salvage Company to see if they could furnish these radiators. *Q.* Just tell us how it happened. Tell me just what was said by *Mr. Harper* at that time."

This was objected to and the objection was overruled. The following answer was given:

"*A.* Mr. *Harper* came down to the office and said, 'Boys, I want to know if you know where some radiators can be borrowed or loaned for use in building No. 1 Grand avenue. Do you know of any place where we can get them—where they can be gotten?' Someone suggested that they were tearing down the Plankinton——

"Mr. Curtis: I object to that.

"The Court: He may answer.

"*A.* And *Mr. Harper* says, 'Get in touch with *Mr. Bradley* of the Wrecking Company and see if they will let the Bading campaign committee have these radiators,' and that I did. *Mr. Harper* says, 'Let them know as soon as possible if we can have them or not.' So that a few days following *Mr. Bradley* called up. He says: 'It is all right. They can have the radiators, but I want to know how many is needed.' I says, 'I don't know, but I will tell *Mr. Harper.*' That states about all of my connection with the case."

Plaintiff's counsel then moved to strike out all of the witness's answer except that which referred to his conversation with *Mr. Bradley,* which motion was denied. The reception of the evidence of this witness concerning the conversation had between him and *Mr. Harper* is assigned as error. The apparent purpose of the testimony was to show that *Mr. Harper* was not requesting a loan of the radiators

for himself, but for the Bading campaign committee. This conversation was had in the absence of the plaintiff. He knew nothing of the conversation, neither is there any evidence in the case that the substance thereof was ever communicated to him, or that Mr. Booth told him that he was acting at the direction of *Mr. Harper,* who was representing the campaign committee. Mr. Booth's testimony shows that he conducted the negotiations at the direction of *Mr. Harper* and that there was nothing brought home to the plaintiff to the effect that either Booth or *Harper* was acting on behalf of the campaign committee. This evidence, therefore, was improper and must have been prejudicial. The testimony upon the main issue was that of the plaintiff on one side and that of the defendant and Booth on the other. We cannot say that this improper evidence did not have a controlling weight with the jury.

The defendant was also recalled and was permitted to give similar testimony. He was questioned as follows:

"*Q.* You heard the testimony of Mr. Booth in which he said he reported to you that *Mr. Bradley* of the Wrecking Company would furnish the radiators? *A.* I did.

"*Q.* What did you do after that? *A.* I told Mayor Bading at that time——

"Mr. Curtis: I object to that.

"The Court: He may answer.

"*A.* (continuing)—that they could be had from the Wrecking Company."

The plaintiff's attorney then moved to strike out the answer as hearsay, which motion was denied by the court. This testimony was evidently introduced for the same purpose as the testimony of Mr. Booth above referred to and was just as objectionable. For these errors there must be a new trial.

During the course of plaintiff's cross-examination, while he was being questioned with reference to a conversation

which he had testified he had with defendant in his office, the following proceedings took place:

"*Q.* Do you remember stating at the time that you were a Republican and that you wanted to see Mr. Bading win? *A.* I might have made that statement. I don't recall it at this time.

"*Q.* Do you deny having made that statement? *A.* No, sir.

"*Q.* Didn't you make the statement to him at that time that you wanted to see the Socialists cleaned out?

"Mr. Curtis: I object to that as being incompetent and immaterial.

"The Court: It is admissible for this reason: because it goes to the question of the recollection of the witness as to this particular conversation. Questioning him as to his recollection or lack of recollection on this particular transaction. It is questioning him as to his recollection. I think the question is proper, as being part of that conversation, on the question of his recollection. The case may finally have to be decided upon the recollection of the plaintiff and the defendant."

The question and the ruling of the court thereon is assigned as error. The question is properly termed by appellant's counsel as "impertinent." It does not have the remotest bearing on the issue involved. If such was not its purpose, its effect certainly was to prejudice any Socialist there might have been on the jury against the plaintiff. The question was not answered, but it is doubtful whether an answer would have added to the prejudicial effect of the question and of the court's ruling thereon. The latitude which may be indulged in the cross-examination of a witness to test his recollection is largely in the discretion of the court, and legitimate cross-examination for that purpose should not be unduly circumscribed. But trial courts should not permit attorneys to use this right as a subterfuge for placing before the jury matters that can have no other effect than to prejudice the opposing party in the minds of the

jury.    That the cross-examination here was not for the
purpose of testing the recollection of the witness as to what
was said in that conversation is manifest from the fact that
the defendant denied ever having any such conversation,
while the question assumes that there was such a conver-
sation and that plaintiff then and there stated that he wanted
to "see the Socialists cleaned out."    Whether or not this
circumstance constitutes prejudicial error we need not de-
cide, in view of the fact that we have already pointed out
other prejudicial error in the trial of the case.    We think,
however, the circumstance referred to merits condemnation.

The court charged the jury that "the burden of proof is
upon the plaintiff to satisfy and convince you that the de-
fendant agreed to return the same" (radiators).    Appellant
criticises this statement because it laid upon the plaintiff the
burden of proving an express agreement on the part of de-
fendant to return the radiators, and claims the general rule
of law to be that one who has received property from another
as his bailee or as agent must restore or account for that
property to him from whom he has received it.    Plaintiff's
theory is that the defendant received these radiators as bailee.
The law is that in order to constitute a bailment there
must be an agreement, express or implied, to redeliver the
property bailed when the purpose of the bailment has been
fulfilled.    6 Corp. Jur. 1084; *McBride v. McNally*, 243
Pa. St. 206, 89 Atl. 1131, 52 L. R. A. n. s. 259.

From this it is to be seen that in order to prove a bailment
it is essential to prove a delivery of property to the bailee
coupled with an agreement, either express or implied, on
the part of the bailee to return it.    The trouble with the
charge is that it tells the jury that in order for the plaintiff
to recover it was necessary for him to prove an express
agreement on the part of the defendant to return the radia-
tors.    This is not accurate, and it may well be that the jury
arrived at its verdict because it did not find this express

promise on the part of the defendant. It goes without saying that upon the plaintiff's version of the transaction the law implies a promise on the part of the defendant to return the radiators, and it was not necessary for him to prove an express agreement in that respect. It appears from the record in this case that if the defendant is not responsible for the return of the radiators no one else is, and we do not think the plaintiff should be compelled to submit to their loss as the result of a trial tinctured with error, and we are disposed to hold that this statement made in the charge to the jury also constitutes reversible error.

*By the Court.*—Order appealed from is reversed, and cause remanded to the circuit court for Milwaukee county with instructions to grant a new trial.