APPLIANCE BUYERS CREDIT CORPORATION, Plaintiff and Appellant, v. CRIVELLO, Receiver; FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF WISCONSIN; KRUEGER ENTERPRISES, INC.; SCHEDULE REALTY, INC.; HABERMAN, Register of Deeds of Milwaukee County; and THE OHIO CASUALTY INSURANCE COMPANY, Defendants and Respondents: HOWARD, Receiver of Pan American Motel, Inc., and Pan American Club, Inc., Impleaded Defendant and Respondent: KRUEGER, Third-Party Defendant and Respondent.

*No. 264. Argued May 6, 1969.—Decided June 27, 1969.*
(Also reported in 168 N. W. 2d 892.)

242

For the appellant there was a brief and oral argument by *Henry C. Friend* of Milwaukee.

For the respondents First Federal Savings & Loan Association of Wisconsin and Schedule Realty, Inc., there was a brief by *Werner & Goodland* of Milwaukee, and oral argument by *John S. Goodland*.

For the respondents Clyde M. Haberman and Ohio Casualty Insurance Company there was a brief by *Robert P. Russell*, corporation counsel, and *Gerald G. Pagel*, assistant corporation counsel, both of Milwaukee, and oral argument by *Mr. Pagel*.

For the respondents Krueger Enterprises and William A. Krueger there was a brief by *Reiske & Reiske* of Milwaukee, and oral argument by *Francis H. Reiske*.

For the respondent Daniel W. Howard, receiver, there was a brief by *Samuel Goldenberg* of Milwaukee.

WILKIE, J.

### Was Recording Required?

The first issue presented on this appeal is whether the denominated lease between Wilson and Pan American

was required to be recorded. More specifically, the issue can be stated: Is the agreement entered into by J. D. Wilson Company, Inc., and Pan American Motel, Inc., on October 26, 1959, a true lease or is it a conditional sales contract or a chattel mortgage in the form of a lease?

The trial court found that the

". . . instrument is denominated by its own terms as a lease, the parties are referred to as lessee and lessor, its term is five years, monthly payments are referred to as rentals, that it provided that at the end of the term the lessor may enter and remove all or that part as lessor desires to remove, and that it further provided that such equipment shall remain personal property despite the degree of annexation to the realty."

Importantly, the instrument does not contain a provision for the vesting of title in the buyer at any time in the future. Therefore, it cannot be construed as a conditional sales contract. [1]

In 1959, a conditional sales contract was defined by sec. 122.01, Stats., as follows:

"122.01 **Definitions.** (1) In this chapter 'conditional sale' means (a) Any contract for the sale of goods under which possession is delivered to the buyer and the property in the goods is to vest in the buyer at a subsequent time upon the payment of part or all of the price, or upon the performance of any other condition or the happening of any contingency; or (b) any contract for the bailment or leasing of goods by which the bailee or lessee contracts to pay as compensation a sum substantially equivalent to the value of the goods, and *by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming the owner of such goods upon full compliance with the terms of the contract."* (Emphasis added.)

Appellant cites *Kiefer-Haessler Hardware Co. v. Paulus* [2] as a case wherein this court construed a lease of

---

[1] *See United Shoe Repairing Machine Co. v. Asoumanakis* (1920), 172 Wis. 102, 178 N. W. 312; 47 Am. Jur., *Sales,* sec. 828, pp. 6, 8.

[2] (1912), 149 Wis. 453, 135 N. W. 832.

personal property to be a chattel mortgage. However, in that case the last paragraph of the agreement read as follows:

" 'It is also further agreed, that I may at any time within said rental term, purchase said furniture and apparatus, by paying therefor the full valuation above stated and then and in that case only, the rent and guarantee theretofore paid shall be deducted therefrom.' " [3]

In *Paulus* this court concluded that "[u]nder the circumstances shown by the evidence the intention of the parties is so plain, notwithstanding the formal words appropriate to a lease, that no other construction is permissible." [4]

Thus, under the statutes as they existed in 1959 [5] it is clear that the register of deeds of Milwaukee county had no duty or obligation to record the instrument.

The demurrers to the alternative cause of action were properly sustained.

### Mortgagee not Party to Transaction or Given Notice Thereof.

The central issue involved in this appeal grows out of the denial of plaintiff-appellant's first cause of action. It may be stated as follows: Is an agreement between a lessor and lessee of personal property, to the effect that the leased equipment shall remain personal property whether or not annexed to the real estate, binding as against a third party, without notice, *having* or *acquiring* an interest in the real estate?

To resolve this issue, we must first examine the law with respect to common law fixtures.

---

[3] *Id.* at page 454.

[4] *Id.* at page 455.

[5] Sec. 59.51, Stats. 1959.

In *Standard Oil Co. v. La Crosse Super Auto Service, Inc.,*[6] this court stated:

">. . . Whether articles of personal property are fixtures, *i.e.*, real estate, is determined in this state, if not generally, by the following rules or tests: (1) Actual physical annexation to the real estate; (2) application or adaptation to the use or purpose to which the realty is devoted; and (3) an intention on the part of the person making the annexation to make a permanent accession to the freehold." [7]

The trial court concluded that the preponderance of the evidence and the reasonable inferences to be drawn therefrom required a finding that the air-conditioning and heating equipment in question constituted fixtures annexed to the premises. Such findings cannot be set aside unless contrary to the great weight and clear preponderance of the evidence.[8]

Appellant does not challenge the findings of the trial court, but rather contends that the law of fixtures does not apply to chattels leased by a mortgagor.

There are two presently existing doctrines with respect to common law fixtures. One doctrine is to the effect that:

"[W]here the accession can be severed from the realty without injury to the latter or to the value of the security for the mortgage debt as it stood before the improvement was made, the same character is impressed upon the accession as between the vendor and the mortgagee as between the vendor and mortgagor; in other words, that it does not become real estate, and may be severed from the realty and removed without invading the rights of the mortgagee." [9]

[6] (1935), 217 Wis. 237, 258 N. W. 791.

[7] *Id.* at pages 240, 241. *See* cases therein cited.

[8] *Schroedel Corp. v. State Highway Comm.* (1968), 38 Wis. 2d 424, 157 N. W. 2d 562.

[9] *Fuller-Warren Co. v. Harter* (1901), 110 Wis. 80, 86, 85 N. W. 698.

The other doctrine, generally known as the "Massachusetts rule," provides, in effect, that the character of the annexed personalty cannot be preserved by contract between the vendor and vendee of personalty "as against the owner of a mortgage of the real estate existing when the annexation is made, who is not a party to such contract . . . ." [10]

"[A] contract between a vendor and vendee reserving title to personal property which is to be incorporated into the real estate of the latter as a permanent improvement thereof, such realty being incumbered by a mortgage and the mortgagee not being a party to the contract, is invalid as to the mortgagee. . . ." [11]

Wisconsin has adopted the "Massachusetts rule." [12]

Appellant concedes that this doctrine prevails in Wisconsin, but argues that it does not apply (1) to trade fixtures, (2) to personal property purchased pursuant to a conditional sales contract, or (3) to personal property which is leased by the mortgagor.

Equipment installed by a tenant in furtherance of his business conducted upon the real estate and found to be trade fixtures, is removable by the tenant at the expiration of the lease term—even against third parties having or acquiring an interest in the real estate. In *Standard Oil Co. v. La Crosse Super Auto Service, Inc.,* [13] this court stated that:

"While the decision in the *Fuller-Warren Case* was obviously ruled by the . . . proposition that one could not reserve title to property permanently annexed to mortgaged realty, by means of a conditional contract, without the consent of the mortgagee . . . and thereby to

---

[10] *Supra,* footnote 6, at page 242. *See Fuller-Warren Co. v. Harter, supra,* footnote 9.

[11] *Standard Oil Co. v. La Crosse Super Auto Service, Inc., supra,* footnote 6, at page 242.

[12] *See Fuller-Warren Co. v. Harter, supra,* footnote 9, at pages 86, 87, and cases cited therein.

[13] *Supra,* footnote 6.

that extent approved the so-called Massachusetts rule, the law of that case does not rule this controversy which is between the mortgagee and the tenant of the mortgagor, and which involves trade fixtures installed for temporary purposes pursuant to an express agreement permitting their removal at the end of the term. It is our opinion that in a controversy like this the intention of the party or parties making the attachment of the trade fixtures should not be ignored and only 'the external indications which show whether or not it belongs to the building as an article designed to become a part of it, and to be used with it to promote the object for which it was erected, or to which it has been adapted and devoted' should be considered, or that the controversy should be determined by 'the inferences to be drawn from what is external and visible.' *Hopewell Mills v. Taunton Savings Bank,* 150 Mass. 519, 23 N. E. 327." [14]

This court went on to add:

"We have never approved of the Massachusetts rule so broadly applied and do not feel impelled to do so now.
"It is clear that the tanks and pumps were trade fixtures installed upon the premises by the plaintiff for temporary purposes connected with its business. .... As before stated, this court has adopted a very liberal rule with respect to trade fixtures which permits tenants to remove them, even in the absence of express stipulation." [15]

There appear to be two bases for the above departure from a strict "Massachusetts rule" approach. First is the obvious policy decision that a tenant should, at the termination of his lease, be permitted to remove equipment which he has installed in the furtherance of his business operation. The second is a clear finding by the court that the personalty was installed upon the premises for *temporary purposes* connected with the business and was not a permanent accession to the freehold.

[14] *Id.* at pages 243, 244.
[15] *Id.* at page 244.

In the *Standard Oil Case* it was stated:

". . . We are of the opinion that our liberal rule with respect to trade fixtures is sound and just, is promotive of business, fosters the leasing of premises, and works no injustice to prior or existing *mortgagees who are protected in situations where such fixtures may not be removed without material or substantial injury to the freehold.* To hold otherwise in this case would amount to holding that our very liberal rule as to trade fixtures has no application to situations where the freehold is in fact mortgaged and no consent of the mortgagee has been obtained permitting the tenant to remove them after they are once physically annexed. If that were declared to be the law, every prospective tenant who intends to install trade fixtures in premises leased by him would have to ascertain whether the premises were mortgaged and, if so, would have to obtain from the mortgagee an agreement permitting the removal of the trade fixtures upon the termination of his lease." (Emphasis added.) [16]

The policy considerations applicable to trade fixtures do not apply to the present situation where chattels are leased by a mortgagor. Even more significantly, there was no finding in the instant case that the air-conditioner and heating units were upon the motel premises for temporary purposes. Rather the trial court found that the parties intended that the units be permanently affixed to the realty.

Thus it appears that the "trade fixture" exception to the strict Massachusetts rule does not support appellant's contention that the law of fixtures does not apply to chattels leased by a mortgagor.

Appellant submits that when a vendor under a conditional sales contract has sold personal property to a purchaser who installed it in his real estate, the vendor can remove the property, provided that he does not materially damage the freehold. This statement is only

---

[16] *Id.* at page 245.

partially correct. Prior to the Uniform Conditional Sales Act, it was the law that one could reserve title to property permanently annexed to mortgaged realty by means of a conditional sales contract, if consent of the mortgagee was obtained.[17] In *Fuller-Warren Co. v. Harter*,[18] this court stated:

"[A] contract between a mortgagor and a third person, preserving the chattel character of property added to real estate as an improvement thereof during the life of the mortgage thereon, *is ineffective as against the mortgagee unless he is a party to the transaction;* and . . . the question of whether it can or cannot be removed without injury to the realty is immaterial." (Emphasis added.)

Following enactment of the Uniform Conditional Sales Act, which was in effect at the time of the transaction in question (ch. 122, Stats. 1959), the law provided that if a conditional sales contract "is properly filed and the goods are severable without material injury to the freehold," [19] such goods can be removed by the vendor reserving title.[20]

Thus, for a vendor to recover goods under a conditional sales contract against the claim of the mortgagee, it was necessary under the common-law rule to have obtained the consent of the mortgagee and it was necessary after the statute was enacted to comply with the constructive-notice requirements.

If there is an analogy to be made between the conditional-sales situation and the lease-of-chattels situation, it must be concluded that the lessor of chattels, which

---

[17] *See Standard Oil Co. v. La Crosse Super Auto Service, Inc., supra,* footnote 6, at page 243.

[18] *Supra,* footnote 9, at page 90.

[19] *Standard Oil Co. v. La Crosse Super Auto Service, Inc., supra,* footnote 6, at page 243, citing *People's Savings & Trust Co. v. Sheboygan Machine Co.* (1933), 212 Wis. 449, 249 N. W. 527, 250 N. W. 385.

[20] *People's Savings & Trust Co. v. Sheboygan Machine Co., supra,* footnote 19.

chattels are to be annexed to the real estate, must at least have put the mortgagee on notice as to the arrangement.

In view of the fact that the filing statutes do not provide for the filing of leases of chattels, it undoubtedly would have been necessary for appellant to give actual notice to the mortgagee. The trial court specifically found that First Federal Savings & Loan Association was without knowledge of plaintiff-appellant's interest in the air-conditioning and heating equipment.

We conclude, therefore, that the conditional-sales exception to the Massachusetts rule does not permit a conclusion that that rule does not apply to a lessor of chattels.

Finally, appellant contends that when a bailor permits a bailee to take possession of his personal property, and the bailee installs such property in the real estate, the bailor can remove his property upon the conclusion of the bailment. Again, appellant's assertion is only partially correct.

Appellant cites *Walker v. Grand Rapids Flouring Mill Co.*[21] However, in that case, which did not involve the interests of a prior mortgagee, the court held that a consignor could recover a machine, which had been annexed to the realty, where the realty had been sold to a party *with notice* of the consignor's interest. In other words, the court held that the interests of a subsequent purchaser, *with notice* of the consignor's interest in the goods, cannot prevail against the interests of the consignor.

Again, this case illustrates the necessity of notice. In American Jurisprudence[22] it is stated:

"[W]hile a landowner cannot defeat the title of a chattel owner by wrongfully attaching the chattel to the land, if, with the consent of the lender, the property lent is so attached as to become a fixture, it will pass to a third person having a lien or acquiring an interest in the

[21] (1887), 70 Wis. 92, 96, 35 N. W. 332.
[22] 22 Am. Jur., *Fixtures*, sec. 9, p. 722.

premises without knowledge of the facts. Conversely, the rights of the lender of the chattel are superior to those of a subsequent purchaser or encumbrancer *with notice."* (Emphasis added.)

The editors of the above publication cite the case of *Standard Oil Co. of New York v. Dolgin,*[23] which involved the lease of a gasoline storage tank. The lessee of the tank buried it in the earth, and then sold the land to the defendant. The plaintiff brought an action to repossess the tank and the Supreme Court of Vermont held for the plaintiff. However, there are at least three significant aspects distinguishing that case from the one at hand. In *Dolgin,* the lessor was asserting his interest against a subsequent purchaser rather than a prior mortgagee; the subsequent purchaser had *notice* of the lessor's interest; and it appears that the Vermont court does not apply the Massachusetts rule. The applicable law in that case is as follows:

". . . The annexation by a bailee to his own real estate of personal property bailed, with or without the knowledge and consent of the bailor, does not change the character of the property, and the bailor may recover it of the bailee's grantee, even though the latter be an innocent purchaser, unless the annexation is of such a character that the identity of the chattel is thereby lost, and it cannot be removed without substantial injury to itself or the real estate." [24]

Appellant also relies on *Bradley v. Harper,*[25] in support of its position. However, as respondent points out, that case involved only the rights of the immediate parties to the transaction and thus is not applicable to this controversy.

We therefore reject appellant's basic assertion that the law of fixtures does not apply to leases of chattels. Due to the absence of any notice to the mortgagee (First

[23] (1921), 95 Vt. 414, 115 Atl. 235, 17 A. L. R. 1218, 1220.
[24] *Id.* at pages 415, 416.
[25] (1920), 173 Wis. 103, 108, 180 N. W. 130.

Federal), its interest in this case must prevail over the assignee of the lessor.

Because of our determination on this second issue, it is unnecessary to consider the further issue of whether the removal of the air conditioner and the heating coils in this case would cause substantial injury to the real estate. That issue is moót.

### Assessment of Costs.

The final issue which we must reach is whether the trial court erred in assessing separate attorneys' fees for the defendants First Federal Savings & Loan Association and Krueger Enterprises, Inc.

We think not. The answers and defenses of these defendants were not the same although, as the trial court observed, "they desired the same outcome upon a key issue." Where several defendants appear with the same or different counsel and they present the same answers and defenses they are entitled to but a single attorney's fee on the entry of judgment for them.[26] But where different defenses and answers are interposed, the court may, as here, allow more than one statutory attorney's fee.[27]

*By the Court.*—Judgment affirmed.

---

[26] *Rheingans v. Hepfler* (1943), 243 Wis. 126, 134, 9 N. W. 2d 585.

[27] *Rosenheimer v. Krenn* (1906), 126 Wis. 617, 632, 633, 106 N. W. 20; *Loomis v. Besse* (1912), 148 Wis. 647, 651, 135 N. W. 123.