GERALD K. ANDERSON, District Attorney Waupaca County
You have inquired as to the duty of the Register of Deeds to record or file certain documents that are self-styled as "common-law liens" and "common-law writs of attachment."
The practice of filing or recording such documents has recently become a common procedure of a group of individuals who, because of identical language or style in several different documents, appear to be either members of the same organization or are associated in a common purpose. Invariably these "common-law liens" and "writs" have been recorded or filed against realty and personalty belonging to public officials.
DUTIES OF REGISTER OF DEEDS
Case law is to the effect that the duties of registers of deeds are ministerial, Annot., 94 A.L.R. 1303 (1935); Youngblood v.United States, 141 F.2d 912 (6th Cir. 1944); State ex rel.Preston v. Shaver, 172 Ohio St. 111, 173 N.E.2d 758 (1961), and that they may not question the validity of instruments presented for recording or filing, People v. Mortenson, 404 Ill. 107,88 N.E.2d 35 (1949); Weyrauch v. Johnson, 201 Iowa 1197,208 N.W. 706 (1926). Nevertheless, I am of the opinion that the register of deeds is not under compulsion to record or file every document presented and in particular, has no duty to record the "common-law liens" or to file the "common-law writs of attachment" in question. Since the duties of registers of deeds are statutory, we must look to the statutes to determine what they are required to do in a given circumstance. As the statutory duties of the registrar and the recording statutes deal with a common subject matter, *Page 59 
they must be considered in pari materia. McGraw-Edison Co.v. ILHR Dept., 72 Wis.2d 99, 240 N.W.2d 148 (1976).
The principal statute concerning the duties of the register of deeds, for purposes of the present discussion, is sec. 59.51(1), Stats., which provides:
The register of deeds shall:
 (1) Record or cause to be recorded in suitable books to be kept in his office, correctly and legibly all deeds, mortgages, maps, instruments and writings authorized by law to be recorded in his office and left with him for that purpose. . . .
In determining the duty imposed under the above-quoted language the importance of the term "writings authorized by law to be recorded" becomes obvious. The statutory language, "authorized by law," has been construed to mean allowed by statute of this state. Musback v. Schaefer, 115 Wis. 357, 91 N.W. 966 (1902); 66 Op. Att'y Gen. 148 (1977). Thus, the statute by its own terms, compels consideration of the recording statutes.
Section 706.05(1), Stats., provides: "Every conveyance, and every other instrument which affects title to land in this state, shall be entitled to record in the office of the register of deeds of each county in which land affected thereby may lie."
In Appliance Buyers Credit Corp. v. Crivello, 43 Wis.2d 241,168 N.W.2d 892 (1969), the court upheld the refusal by the register of deeds to record a lease that on its face did not affect an interest in land. And in Walter Laev, Inc. v. Karns,40 Wis.2d 114, 120, 161 N.W.2d 227 (1968), the court quoted with approval the following language from Roberts v. United Statesex rel. Valentine, 176 U.S. 221 (1900), concerning ministerial duties of public officers:
 "`Every statute to some extent requires construction by the public officer whose duties may be defined therein. Such officer must read the law, and he must therefore, in a certain sense, construe it, in order to form a judgment from its language what duty he is directed by the statute to perform. But that does not necessarily and in all cases make the duty of the officer anything other than a purely ministerial one. If the law direct [s] him to perform an act in regard to which no discretion is committed to him, and which, upon the facts existing, he is bound to perform, *Page 60 
then that act is ministerial, although depending upon a statute which requires, in some degree, a construction of its language by the officer.'"
I conclude that registers of deeds should refuse to file or record the "liens" and "writs" where he or she has been specifically advised by the Attorney General, district attorney, or county corporation counsel that such documents are not required to be filed or recorded. In doing so, the register of deeds is exercising a purely ministerial act.
COMMON-LAW LIENS
The "common-law liens" in question purport to affect title to real property. They specifically describe certain real estate, assert that "Demandant" claims anywhere from $156 thousand to $25 million from respondent and that "[t]he object of this action is to enable the Demandant to secure money damages, and such property will be subject to prosecution to satisfy judgments in this action." The "lien" also states on its face that it "Supercedes All Mortgages."
The fact is that such common-law liens do not "affect title to land in this state" within the meaning of sec. 706.05(1), Stats., nor are they "deeds, mortgages, maps, instruments and [other] writings authorized by law to be recorded . . . and left with him for that purpose" within the meaning of sec. 59.51(1), Stats. Accordingly, the register of deeds may properly refuse to record them because the common-law liens in question do not apply to realty.
As stated in 53 C.J.S. Liens sec. 7, at 851: "A lien in its narrower sense, as understood at common law, applies only to personal property." In Moynihan Associates, Inc. v. Hanisch,56 Wis.2d 185, 190, 201 N.W.2d 534 (1972), the court describes the nature of common-law liens:
 This court has held for years that a person who has bestowed labor upon an article or done some other act in reference to it by which its value has been enhanced has the right to detain the same until he is reimbursed for his expenditures and labor; and that every bailee for hire who by his labor and skill has added value to the goods has a lien upon the property for his reasonable services or charge rendered. *Page 61 
Section 289.48, Stats., sets forth the manner in which common-law liens are enforced and it does not authorize the filing or recording of the documents in question. Further, it provides as to any debt claimed to be over $100 "then such lien may be enforced against the same by action."
COMMON-LAW WRITS OF ATTACHMENT
Registers of deeds have no duty to file so-called "Common-Law Writs of Attachment" because there is no such instrument recognized at common law. As stated in 7 C.J.S. Attachment sec. 3, at 228:
 Attachment to seize and hold the property of defendant for the payment of the debt to collect which suit is brought is a proceeding unknown to the common law; it had its origin in the civil law, and first arose in England in the form of a local custom of London merchants, out of which, as modified and extended by statute, has grown into the modern law of attachment. . . . Attachment as it exists in the United States today is deemed to be a summary and extraordinary remedy in derogation of the common law and has been said to owe its existence entirely to statutory enactment, and it follows that no right or title can be acquired by its exercise unless there has been at least a substantial compliance with the provisions of the statute.
Our court has consistently required strict adherence to the statutory procedure in attachment proceedings, Morrison v. Fake, 1 Pin. 133 (1841) and Pratt v. Pratt, 2 Pin. 395, 2 Chand. 48 (1850). As stated in Barth v. Graf and others, 101 Wis. 27, 41,76 N.W. 1100 (1898), "[t]he statute authorizing an attachment is in derogation of the common law, and must be substantially pursued in order to give validity to the attachment." [(Accord,Lederer and others v. Rosenthal, 99 Wis. 235, 74 N.W. 971 (1898);Elliot v. Jackson, 3 Wis. 649 (1854).]
It is quite clear then, without going into detail, that each of the so-called "common-law writs of attachment" we have examined is void on its face in that the statutory procedure outlined in ch. 811 has not been followed as required under Wisconsin law. First, sec. 811.02, Stats., requires it to be issued by a judge or other judicial officer after a summons and complaint have been filed, and be in the name of the court and under its seal. Section 811.03, Stats., requires a rather *Page 62 
comprehensive affidavit; sec. 811.06, Stats., requires posting of a bond "sufficient to provide adequate security to the defendant for any damages the defendant may sustain by reason of the attachment." Section 811.10, Stats., provides for enforcement of the writ by the sheriff.
Accordingly, the "writs of attachment" in question, not having followed the statutory procedure for enforcement pursuant to ch. 811, Stats., as stated above, are not entitled to be filed by the register of deeds as provided by sec. 811.11, Stats., and sec.59.54, Stats., and should be refused.
SLANDER OF TITLE
The "liens" often range from $15 to $25 million, which fact by itself strains any reasonable credulity. It has been called to my attention that in one county alone "liens" in excess of $350 million have been presented to the registrar. If all counties were considered the total of such, "liens" might approach $1 billion.
The recent epidemic of these filings and recordings against public officials and employes and the striking similarity of the instruments make a clear showing of a conspiracy to intimidate public officials and employes and to frustrate the operation of government by mass slander of title.
In Annot., 39 A.L.R.2d 840, 842 (1955), it was concluded that there is no doubt the act of wrongfully recording an unfounded claim is actionable as slander of title. These "common-law liens" on their face are frivolous and evidence unfounded claims. InSchlytter v. Lesperance, 62 Wis.2d 661, 215 N.W.2d 552 (1974), it was held that the recording of a false affidavit was actionable as common-law slander of title.
The Legislature specifically has prohibited slander of title. Sec. 706.13, Stats. Since these documents on their faces evince a violation of this prohibition, it would frustrate the legislative objective to prevent such slander were I to conclude that they, nevertheless, were entitled to be recorded under the recording statutes which are contained in the same chapter. *Page 63 
CONCLUSION
The pattern of conduct under review in this opinion functions to subvert due process of law. Due process, in its most elemental sense, is "simply, that which must be followed in depriving any one of anything which is his to enjoy until he shall have been divested thereof by and according to the law of his country."Ekern v. McGovern, 154 Wis. 157, 240, 142 N.W. 595 (1913). Rather than follow established laws, the participants put a cloud on property titles by filing and recording documents which in fact are unknown to the law and are void ab initio. They seek to confuse registers of deeds by styling these fugitive instruments as "liens" or "writs." The victims sustain a cloud on their title without the benefit of compliance with statutorily provided procedures.
In conclusion, it is my opinion that registers of deeds have no obligation under law to accept these "common-law liens" or the "common-law writs of attachment" for recording or filing and should refuse to do so.
It is also my opinion that these documents, whether denominated as "common-law liens," "common-law writs," or by any other description, are not a security interest in or an encumbrance on property, real or personal. These instruments are void ab initio
and possess no legal significance.
BCL