Vivid, Inc., a Wisconsin corporation, Plaintiff-Appellant,

v.

Ronald R. Fiedler, Secretary of the Wisconsin Department of Transportation, and the Wisconsin Department of Transportation, Defendants-Respondents.†

Court of Appeals

*No. 90-2787. Submitted on briefs July 2, 1991.—Decided January 28, 1993.*

(Also reported in 497 N.W.2d 153.)

†Petition to review granted.

For the plaintiff-appellant the cause was submitted on the briefs of *Thomas S. Hornig* and *Marc T. McCrory* of *Brennan, Steil, Basting & MacDougall, S.C.* of Janesville.

For the defendants-respondents the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Donald W. Smith,* assistant attorney general.

Brief of amicus curiae was filed by *Thomas M. Olejniczak* of *Liebmann, Conway, Olejniczak & Jerry, S.C.* of Green Bay on behalf of Outdoor Advertising Association of Wisconsin.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J. Vivid, Inc., began this proceeding October 17, 1989, against the Wisconsin Department of Transportation under sec. 32.10, Stats., to recover compensation for the alleged taking of two of its outdoor advertising signs located adjacent to Interstate Highway 90 approximately one mile south of Janesville. Section 32.10 permits the owner of property which has been occupied by a person having the power of condemnation to institute condemnation proceedings by filing a verified petition in the office of the clerk of the circuit court.[1] Upon such filing, the matter is deemed an action at law. The process is termed inverse condemnation.

The trial court granted the department's motion for summary judgment, adopting the department's arguments. Vivid appeals from the court's judgment entered November 15, 1990. We reverse and remand for further proceedings as outlined in sec. 32.10, Stats.

---

[1] Section 32.10, Stats., provides in part:

If any property has been occupied by a person possessing the power of condemnation and if the person has not exercised the power, the owner, to institute condemnation proceedings, shall present a verified petition to the circuit judge of the county wherein the land is situated asking that such proceedings be commenced. The petition shall describe the land, state the person against which the condemnation proceedings are instituted and the use to which it has been put or is designed to have been put by the person against which the proceedings are instituted. . . . The petition shall be filed in the office of the clerk of the circuit court and thereupon the matter shall be deemed an action at law and at issue, with petitioner as plaintiff and the occupying person as defendant.

## THE ISSUES

We identify the following issues raised in the parties' briefs and supplemental briefs:[2]

(1) May the owner of personal property institute condemnation proceedings under sec. 32.10, Stats.? The department argues that Vivid's outdoor advertising signs are personal property and that sec. 32.10 is limited to the taking of land, or an interest in land. We conclude that the owner of property which is "taken" by the state may maintain an action under sec. 32.10 if the state does not provide the owner with just compensation as required by article I, section 13, of the Wisconsin Constitution, regardless of whether the property taken is personal property or an interest in land. We further conclude that Vivid's signs were fixtures or "personal property directly connected with lands," pursuant to sec. 32.01(2), Stats., to which sec. 32.10 applies.

(2) Could Vivid maintain inverse condemnation proceedings under sec. 32.10, Stats., where the department had instituted eminent domain proceedings under sec. 32.05, Stats., to acquire the land on which the signs were located? We conclude that the department's initiation of eminent domain proceedings under sec. 32.05 to acquire the land on which Vivid's signs were located did not preclude Vivid from instituting inverse condemnation proceedings under sec. 32.10.

(3) Does "traditional" constitutional eminent domain law require compensation for the "taking" of outdoor advertising signs? We conclude that outdoor advertising signs are "property" which may not be taken

---

[2] By order dated May 22, 1992, we ordered additional briefing as to the application and effect of sec. 32.20, Stats., to this case.

for public use without just compensation therefor. WIS-CONSIN CONST. art. I, § 13.

(4) Is Vivid's just compensation for the enforced removal of its outdoor advertising signs limited to the "additional items payable" under sec. 32.19, Stats., and "moving expense" under Wis. Adm. Code sec. ILHR 202.64? We conclude that the items payable under sec. 32.19 and sec. ILHR 202.64 are not just compensation for the taking of property under WIS. CONST. art. I, § 13. The question of how Vivid's signs are to be valued is to be determined at trial.

## I.

### APPLICABILITY OF SEC. 32.10, STATS.

The department argues that Vivid's signs were not fixtures, *i.e.*, real estate, and therefore Vivid could not institute condemnation proceedings under sec. 32.10, Stats., which, it argues, is limited to the taking of land. Although we conclude that Vivid's evidence establishes as a matter of law that its signs were fixtures, we do not base our decision solely on that conclusion. It is well established that an owner of property may maintain an action under sec. 32.10 if he or she demonstrates a taking which must be compensated for under article I, section 13, of the Wisconsin Constitution. We conclude that Vivid has demonstrated such a taking. We further conclude that Vivid's signs constituted "personal property directly connected with lands," to which sec. 32.10 applies.

Section 32.10, Stats., applies to "any property [which] has been occupied by a person possessing the power of condemnation . . .." Section 32.01, Stats., provides: "In this subchapter [General Eminent Domain]

149

unless the context clearly requires otherwise: . . . (2) 'Property' includes estates in lands, fixtures and personal property directly connected with lands."

Arthur T. Donaldson, president of Vivid, in opposition to the department's motion for summary judgment, deposed as follows. Vivid's "Antique Mall" sign was an 18.75 by 8-foot wood sign structure on four wood posts sunk firmly and deeply into the ground in concrete. The sign was erected on or about April 11, 1966. Vivid's "Trucks, Inc." sign was the same size as the Antique Mall sign and was very similar to that sign, but used three posts instead of four. The Trucks, Inc. sign was erected in, or prior to, 1965. Both signs had been used by advertisers without interruption since the dates of their construction. Had the signs not been removed in response to the department's orders, they would have continued in use for the indefinite future. It was Vivid's intention to renew its leases with the landowners for the indefinite future.

It is undisputed that Vivid had Location Agreements or leases for each of the sites for five-year periods subject to renewal for a like period, for a rental of $400 per year. Vivid had a Bulletin Contract with East State Street Antique Mall dated May 16, 1988, for thirty-six months, renewable for a like period, at a monthly rental of $500. It also had a Bulletin Contract with Trucks, Inc., dated February 2, 1988, for a period of thirty-six months at a monthly rental of $790.

Donaldson deposed that the removal of the signs "virtually destroyed all utility that the signs had." He further deposed that there was no practical, usable site for these signs anywhere reasonably related to the subject market area and Interstate Highway 90 motorists. The department did not submit affidavits countervailing Vivid's evidence.

## A. Application of Sec. 32.10, Stats., to Takings

We first consider whether this evidence establishes Vivid's right to institute and maintain an inverse condemnation proceeding under article I, section 13 of the Wisconsin Constitution. The facts in this case are similar to those in *Maxey v. Redevelopment Authority*, 94 Wis. 2d 375, 288 N.W.2d 794 (1980). Maxey was the lessee of a building located in Racine which the Redevelopment Authority sought to condemn as part of an urban renewal project. While the redevelopment plan was being formulated, the Racine City Council placed a moratorium on the issuance of theater licenses in the central business section, which included a theater operated in the building leased by Maxey. The court held that because of his leasehold interest, Maxey qualified as an owner of property as that term is used in sec. 32.10, Stats., because of his leasehold interest. *Id.* at 388, 288 N.W.2d at 800. The court said that: "In order to commence inverse condemnation proceedings . . . a property owner must demonstrate that there has been either an occupation of his property within the meaning of sec. 32.10, Stats., or a taking, which must be compensated under art. I, sec. 13, of the Wisconsin Constitution." *Id.* The trial court concluded that the city and the Redevelopment Authority were to be considered alter egos, and therefore, the city's refusal to relicense the theater because of the redevelopment project constituted a legal restraint by the condemning authority on Maxey's use of the property. *Id.* at 390, 288 N.W.2d at 801. The court found that there was therefore a taking. It said: "A perusal of the record demonstrates that the denial of the theater license [deprived] Maxey of a substantial portion of the beneficial use of his leasehold interest." *Id.*

Here, the department's orders that Vivid remove its signs from the property which the department proposed to take deprived Vivid of all, or substantially all, of the beneficial use of Vivid's leasehold interests. Under *Maxey*, Vivid could maintain an action for its just compensation under sec. 32.10, Stats.

## B. Fixtures

We next consider whether Vivid's signs constituted fixtures. The rule which has developed in Wisconsin as to what constitutes a fixture is not really a comprehensive definition, but a statement of the factors which are to be applied to determine whether the property in question constitutes a fixture:

> [W]hether articles of personal property are fixtures, *i.e.*, real estate, is determined in this state, if not generally, by the following rules or tests: (1) Actual physical annexation to the real estate; (2) application or adaptation to the use or purpose to which the realty is devoted; and (3) an intention on the part of the person making the annexation to make a permanent accession to the freehold.

*Premonstratensian Fathers v. Badger Mut. Ins. Co.*, 46 Wis. 2d 362, 367, 175 N.W.2d 237, 239–40 (1970) (quoting *Standard Oil Co. v. La Crosse Super Auto Serv., Inc.*, 217 Wis. 237, 240–41, 258 N.W. 791, 792 (1935)). Applying these factors to the facts and circumstances of this case, we conclude that Vivid's signs constituted fixtures.

## 1. Annexation

Annexation refers to: "[t]he act of attaching or affixing personal property to real property and, as a gen-

eral proposition, an object will not acquire the status of a fixture unless it is in some manner or means, albeit slight, attached or affixed, either actually or constructively, to the realty." *Id.* at 367-68, 175 N.W.2d at 240 (quoting 35 AM. JUR. 2d *Fixtures* § 5 at 703). We have described how Vivid's signs were attached to the underlying land by posts sunk in concrete into the ground. The method of attachment clearly was substantial and intended to be permanent.

## 2. Adaptation

"Adaptation refers to the relationship between the chattel and the use which is made of the realty to which the chattel is annexed." *Id.* at 370, 175 N.W.2d at 241. The land to which Vivid's signs are attached is not used for the business advertised by the signs. In that respect, there is no relationship between the signs and the use of the realty to which the signs are annexed. However, it is well-established that land located next to a busy highway is adaptable to use as the site for an outdoor advertising display. Vivid's Location Agreements contain the following:

> It is understood and agreed that the sign will be UNOBSTRUCTED at all times so that it may be read from the Highway for a distance of at least fifteen hundred feet, providing lessor controls said property; and no other signs shall be placed by any other company within 300 feet of same; or if corn is planted, it shall be angled at 25° from corner of sign farthest from road to fence line in front of sign. [Emphasis in original.]

Thus, the signs have been adapted to the use of the underlying land so that the uses of the locations leased by Vivid are not incompatible with Vivid's use of the location sites for its advertising signs. Likewise, the use

of the underlying land has been adapted to Vivid's use of the location sites for its outdoor advertising signs.

3. Intent

"This court has repeatedly held that intent is the primary determinant of whether a certain piece of property has become a fixture. The relevant intent is that of the party making the annexation." *Premonstratensian Fathers,* 46 Wis. 2d at 371, 175 N.W.2d at 242 (footnote omitted). Where a party's intent is an issue, summary judgment is generally inappropriate. *Arnold v. Shawano County Agric. Soc'y,* 106 Wis. 2d 464, 469–70, 317 N.W.2d 161, 164–65 (Ct. App. 1982), *aff'd,* 111 Wis. 2d 203, 330 N.W.2d 773 (1983). However, summary judgment is appropriate when the material facts are not in dispute and when inferences which may reasonably be drawn from the facts are not doubtful and lead to only one conclusion. *Radlein v. Industrial Fire & Casualty Ins. Co.,* 117 Wis. 2d 605, 609, 345 N.W.2d 874, 877 (1984).

Vivid's president stated that both of its signs would have remained up and usable by Vivid for the indefinite future had the signs and sign sites not been taken by the department. He further stated that it was Vivid's intent that the signs would remain firmly affixed to the respective sign sites indefinitely. It is undisputed that both signs had been used continuously for advertising purposes for almost twenty-five years.

We do not rely exclusively on the president's subjective intent. The Location Agreements provide: "It is further understood that Vivid, Inc., shall have access to the sign for repairs, repaints, or removal any time they deem such work necessary and that title of the boards shall rest in Vivid, Inc." The department argues that this

reservation negates an intention to make Vivid's signs fixtures. However, the right of a lessee to remove a fixture from leased property is common in leases of land to which a fixture is attached. We conclude that Vivid's intent is not negated by its reservation of the right to remove its signs. The fact remains that for almost twenty-five years, Vivid has maintained its signs in the same locations.

The department further argues that the fact that the signs have never been taxed as real property confirms that the signs are not fixtures. The assessment and taxing officials' intent is not the intent of the owner of the property. Taxing officials may treat fixtures as personal property in order to assess the property to the person beneficially entitled thereto. *See* secs. 70.18 and 70.19, Stats.

For the foregoing reasons, we conclude that Vivid's signs constituted fixtures. We base our conclusion on a consideration of the signs annexation to the property, the adaption of the realty's use to accommodate the signs, and the intent of Vivid in maintaining the signs.

## C. *Personal Property Directly Connected With Lands*

Alternatively, we conclude that Vivid's signs constitute "personal property directly connected with lands." Section 32.01(2), Stats. The department argues that the context of sec. 32.10, Stats., shows that the word "property" as used therein does not extend to personal property. It points to the language of the statute which provides that the owner of the property shall present a verified petition to the circuit judge of the county "wherein the *land* is situated." (Emphasis added.) Also, "a copy of the petition shall be served upon the person who has occupied petitioner's *land,* or interest in *land.*"

155

(Emphasis added.) While sec. 32.10 could be clearer, we conclude from the fact that the legislature chose to make the inverse condemnation procedure available to the owner of "property" negates an intent to limit the statute to land, or an interest in land. Had the legislature intended to so limit the statute, it would have provided: "If any land has been occupied by a person possession the power of condemnation . . .."

The legislative history of secs. 32.01 and 32.10, Stats., supports our conclusion. Chapter 32 was created by sec. 1, ch. 571, Laws of 1919. "Property" was defined as it is presently defined. The provision authorizing a property owner to maintain an inverse condemnation proceeding was contained in the same section, sec. 32.04, Stats. (1919), prescribing the procedure to be followed by a person desiring to acquire property by condemnation. The first sentence of sec. 32.04 began: "Any person desiring to acquire any property by condemnation shall present a verified petition therefor . . .." The sentence authorizing an owner to institute an inverse condemnation proceeding read: "If any owner of property desires to institute condemnation proceedings . . .." Thus, it is plain that the legislature intended that the word "property" should have the same meaning whether the condemnation proceeding was initiated by a person having the power to acquire property by condemnation or by the property owner.

We therefore conclude that the context of sec. 32.10, Stats., does not require that the word "property" be defined to apply only to land or real estate. The owner of personal property may institute condemnation proceedings under sec. 32.10 if the personal property is "directly connected with lands." It cannot be seriously maintained

that Vivid's signs are not directly connected with the lands on which they are located.

## II.

## DEPARTMENT'S CONDEMNATION OF UNDERLYING LAND

The department argues that Vivid may not maintain inverse condemnation proceedings under sec. 32.10, Stats., because the department had exercised its power to condemn the land on which Vivid's signs were located. The department's argument is based on the qualification under sec. 32.10 that the owner may institute condemnation proceedings thereunder "[i]f any property has been occupied by a person possessing the power of condemnation *and if the person has not exercised the power . . ..*" (Emphasis added.)

The purpose of the qualification is to ensure that condemnation and inverse condemnation are not instituted and maintained at the same time with respect to the same property. *See Maxey,* 94 Wis. 2d at 393–94, 288 N.W.2d at 802–03. Here, the department has initiated eminent domain proceedings to acquire the land on which Vivid's signs are located, but it has taken no action to acquire the signs themselves. Therefore, Vivid was free to pursue the only remedy available to it.

## III.

## APPLICABILITY OF JUST COMPENSATION REQUIREMENT

The department argues that "traditional constitutional eminent domain law does not accord compensation for the removal of billboards or other personal prop-

erty." We reject the proposition implicit in the department's argument that outdoor advertising signs are not deserving of constitutional protection. Both the United States Congress and the Wisconsin legislature have decreed otherwise. Title 23 U.S.C. § 131(g) provides:

> Just compensation shall be paid upon the removal of any outdoor advertising sign, display, or device lawfully erected under State law and not permitted under subsection (c) of this section, whether or not removed pursuant to or because of this section.

Section 84.30(6), Stats., contains a comparable provision for signs removed or relocated on or after March 18, 1972.

The department argues that we should ignore these provisions because they are not funded. Regardless of the availability of funding, these legislative enactments demonstrate a recognition by congress and the Wisconsin legislature that outdoor advertising signs are property which the state cannot acquire or destroy without just compensation. *See City of Whitewater v. Vivid, Inc.*, 140 Wis. 2d 612, 618–19 n.7, 412 N.W.2d 519, 521 n.7 (Ct. App. 1987) (In amending 23 U.S.C. § 131(g), Congress intended to require the states, when removing highway advertising signs, either to pay the sign owners just compensation determined by mutual agreement, or to utilize their power of eminent domain.). For these reasons, we conclude that "traditional" constitutional eminent domain law requires that the state compensate the sign owner for the taking of an outdoor advertising sign.

## IV.

## RELOCATION EXPENSES AS JUST COMPENSATION

 The department argues that Vivid is entitled only to displacement expenses under sec. 32.19, Stats., and Wis. Adm. Code sec. ILHR 202.64. We conclude that in sec. 32.19 the legislature intended to provide compensation to persons displaced by any public project for items not compensable under the eminent domain procedures. Section 32.19 is entitled "Additional items payable." While the title is not part of a statute, it can be indicative of legislative intent. *State v. Mahaney,* 55 Wis. 2d 443, 449, 198 N.W.2d 373, 375–76 (1972).

Section 32.19(1), Stats., provides in part:

> The legislature declares that it is in the public interest that persons displaced by any public project be fairly compensated by payment for the property acquired *and other losses hereinafter described and suffered as a result of programs designed for the benefit of the public as a whole . . ..* [Emphasis added.]

The department points to sec. 32.19(2), Stats., which provides:

> (a) "Business" means any lawful activity . . . conducted primarily:
>
> . . ..
>
> 4. [B]y the erection and maintenance of an outdoor advertising display or displays . . ..

Under subsection (4) outdoor advertising displays may be erected and maintained for a variety of purposes. The introductory clause of subsection (4) makes clear that outdoor advertising displays are included in the definition of "business" "[s]olely for the purpose of sub. (3)

. . .." Subsection (3) is entitled "Relocation payments." Thus, the additional items payable as to outdoor advertising signs are only relocation payments under sec. 32.19(3), Stats.

The relocation of an outdoor advertising sign does not always implicate article I, section 13, of the Wisconsin Constitution because the sign may be easily relocatable. However, in this case, Vivid's evidence in opposition to the department's motion for summary judgment shows that its signs are not relocatable and that Vivid has been deprived of all, or nearly all, of the beneficial use of the signs. The department has not submitted countervailing evidence. Vivid is entitled to just compensation under article I, section 13, of the Wisconsin Constitution. *Howell Plaza, Inc. v. State Highway Comm'n*, 92 Wis. 2d 74, 81–82, 284 N.W.2d 887, 891 (1979). That compensation must either be negotiated or the state must exercise its power of eminent domain to acquire the signs.

Wisconsin Adm. Code sec. ILHR 202.64(4) provides:

> An agency shall pay a person for direct loss of tangible property when a person does not relocate a sign. The payment shall be the depreciated reproduction cost of the sign as determined by the agency or the estimated cost of moving the sign, whichever is less.

The department argues that: "Subsection (4) is designed to deal with the allegedly unrelocatable advertising sign." We disagree. Section ILHR 202.64(4) is intended to cover the situation where the outdoor advertising sign is relocatable, but the owner elects not to remove the sign. This intent is made clear by Wis. Adm. Code sec. ILHR 202.56(2), which governs the payment of business mov-

ing expenses.[3] Subsection (2) provides in part: "An agency shall pay a person for direct loss of tangible property *which a person may move but does not,* provided the person makes a good faith effort to sell the property." (Emphasis added.)

Wisconsin Adm. Code sec. ILHR 202.64(4) applies only where the owner of the outdoor advertising sign abandons the sign or elects not to move the sign. It is clear that the provision does not apply where the depart-

---

[3] Wisconsin Adm. Code sec. ILHR 202.56(2) provides:

An agency shall pay a person for direct loss of tangible property which a person may move but does not, provided the person makes a good faith effort to sell the property. Selling expense and sale proceeds shall be supported by receipts or records. Payment shall be determined as follows:

(a) The payment, when an operation is to be reestablished and an item of personal property used in the operation is not moved but replaced with a comparable item at the new location, shall be the lesser of:

1. The replacement costs, minus the net proceeds of the sale. Trade-in value may be substituted for net proceeds when applicable;

2. The estimated cost of moving the item to a replacement site;

(b) The payment, when an operation is to be discontinued or an item is not replaced in a reestablished operation, shall be the lesser of:

1. The difference between the market value of the tangible property for continued use at its location before displacement, less the net proceeds of the sale;

2. The estimated cost of moving the item to a replacement site;

(c) A payment for loss of an item abandoned because it wasn't sold may not be more than its market value for continued use before displacement, or the estimated cost of moving the item, whichever is less, plus the cost of the attempted sale, irrespective of the cost to an agency for removing the item.

(d) An agency shall pay a person for direct loss of tangible property when it is abandoned and no effort was made to sell the property, provided the agency determines a sale was not practicable.

(e) The cost to an agency for removal of tangible property may not be considered an offsetting charge against other relocation payments.

161

ment must exercise its powers of eminent domain to acquire the sign. Wisconsin Adm. Code sec. ILHR 202.001 provides in part: "Payments required by this chapter do not affect any right to seek compensation specified in ss. 32.01 through 32.18 and 32.28, Stats." The department argues that if Vivid felt undercompensated for its loss of its leasehold interests in the land taken, its remedy was to appeal the awards of compensation as provided in sec. 32.05(2a), Stats., in the manner set forth in sec. 32.05(9)-(12), Stats., or join in an appeal already initiated by the owner of the land taken.

However, sec. 32.05(2a), Stats., applies only where the condemnor makes a jurisdictional offer to purchase the owner's property. The statute provides in part: "The condemnor shall serve upon or mail by certified mail to all persons named therein a copy of the conveyance and a notice of the right to appeal the amount of compensation under this subsection." The department does not claim that it made a jurisdictional offer to purchase Vivid's signs, or that it mailed Vivid a notice of its right to appeal under sec. 32.05(2a).

The department does not refer us to any provision of sec. 32.05, Stats., which would have allowed Vivid to appeal from the compensation awards made to the owners of the property upon which their signs were located. The right to appeal under sec. 32.05(10)(a), Stats., is limited to the parties to the proceeding before the condemnation commission. That section provides in part: "Within 60 days after the date of filing of the commission's award, any party to the proceeding before the commission may appeal to the circuit court of the county wherein the property is located." An appeal to the commission may be made by any party having an interest in the property condemned. Section 32.05(9)(a), Stats.

However, the department argues that Vivid's signs were not fixtures and thus did not constitute an interest in the land taken. The department has waived any right to argue that Vivid's sole remedy was to appeal from the department's awards of compensation to the owners of the land taken.

The department also argues that sec. 32.20, Stats., provided Vivid with the exclusive remedy for recovery of its moving expenses. However, Vivid does not seek to recover moving expenses to which it is entitled under sec. 32.19(3), Stats. Vivid claims that the department has taken its property and must compensate it for the value of that property and not its moving and related expenses. We agree and remand the case for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.